## WILLINK, EXECUTRIX, *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 180. Argued January 21, 1916.—Decided April 3, 1916.

The mere location by the Secretary of War of a harbor line does not amount to a taking of property within the line or its appropriation to public use; nor does a taking result from the request of an officer of the United States to a riparian owner to vacate if such request is neither acceded to nor enforced.

The fact that the Government makes a contract to cut away land

within a harbor line location does not amount to a taking of such land if there was no attempt to perform the contract.

Whatever rights a riparian owner may have in land below mean high-water line of a navigable and tidal river, they are subordinate to the public right of navigation and the power of Congress to employ all appropriate means to keep the river open and navigation unobstructed.

Congress may prevent renewal of existing obstructions below mean high water, if navigation may be injuriously affected thereby, and the owner is not entitled to compensation therefor.

In this case, a riparian owner on the Savannah River was held not to be entitled to recover as upon an implied contract for taking his property by reason of damages alleged to have been sustained by him in consequence of the exercise of the power of Congress over navigable waters.

38 Ct. Cl. 693; 49 Ct. Cl. 701, affirmed.

THE facts, which involve the right of the owner of a wharf in the harbor of the Savannah River to recover from the Government as upon an implied contract for the taking of his property in the improvement of that harbor, are stated in the opinion.

Mr. *George A. King*, with whom *Mr. William B. King* was on the brief, for appellant:

Appellant's right of recovery is based on the following grounds:

The Government had the right to take this property for the public use of harbor improvement.

This right was exercised by the following acts of governmental authorities:

The submission to Congress by the officers of the Engineer Corps of the United States Army of a plan which contemplated the taking of this very property and the payment of damages for the same.

The approval of the plan by Congress through the making of appropriations for the same.

The action of the Secretary of War in the establishment of a harbor line which took in this very property.

The entering into a contract by an engineer officer of the Army, approved by the Chief of Engineers, for cutting off the land outside of the harbor line thus fixed.

The action of the engineer officer in charge of improvements in ordering Willink to desist from renewing his piling and in ordering him to remove everything belonging to him outside of the harbor line.

The action of the United States District Attorney in threatening appellant with prosecution under the criminal provisions of the River and Harbor Act, unless he desisted from further obstruction, and removed such piling as Captain Carter desired removed, i. e., all piling outside the bulkhead line.

Appellant acquiesced in the taking of his property by such ample authority, both legislative and executive; acted the part of a good citizen in refraining from further acts of ownership thereof or interfering with the projects of improvements; and thus reserved his right to recover compensation.

The opinion of the court below in its first paragraph expresses regret at its inability to reach a conclusion favorable to the claimant. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *United States* v. *Great Falls Co.*, 112 U. S. 645; *United States* v. *Lynah*, 188 U. S. 445; *United States* v. *Welch*, 217 U. S. 333, 338; *United States* v. *Guzzard*, 219 U. S. 180; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546.

*Greenleaf* v. *Garrison*, 237 U. S. 251, distinguished, as the invasion of the property in this case was of the land,—not merely of the possessory right of a riparian owner in the bed of adjacent navigable water.

The right of appellant to compensation does not rest entirely upon the Fifth Amendment or other general provision of law. It is also based upon the fact that the approved project under which the land and wharves were taken contemplated that they should be paid for, and the

estimate of appropriation included $45,000 for "the damages to private property" and "replacing wharves" and Congress appropriated the sum so asked. Hence, the claim rests also upon the direct provisions of an act of Congress.

There is no foundation for the view that the acts of the officers of the United States stopped short of a taking of the claimant's property. Everything was done under full sanction of the Secretary of War. He in turn acted under the authority of an act of Congress. Claimant was not obliged to submit to the indignity of arrest and prosecution, in order to test his rights. On the contrary, he acted as a good citizen, in conforming to the desires of the officers of the Government, who were carrying out the directions of the Secretary of War, and in suffering the damage inflicted upon him, relying upon the courts for redress in awarding him the "just compensation" assured by the Constitution for the taking of his property. *Pearsall* v. *Supervisors*, 74 Michigan, 558; *Janesville* v. *Carpenter*, 77 Wisconsin, 288, 301; *Forster* v. *Scott*, 136 N. Y. 577; *St. Louis* v. *Hill*, 116 Missouri, 527, 534; Lewis on Eminent Domain, §§ 95–101.

*Mr. Assistant Attorney General Huston Thompson* for the United States:

Congress acted within its constitutional powers in authorizing the Secretary of War to establish the harbor lines in the Savannah River. *Greenleaf Lumber Co.* v. *Garrison*, 237 U. S. 251, 258; § 12, Act of August 11, 1888, 25 Stat. c. 860, 400, 425.

In establishing the harbor line the Secretary of War was simply attempting to carry out previous plans within the power delegated to him by Congress. *Union Bridge Company* v. *United States*, 204 U. S. 364. As the agent of Congress the Secretary's acts in the premises cannot be questioned. *Scranton* v. *Wheeler*, 179 U. S. 141, 162; *United States* v. *Chandler Dunbar Co.*, 229 U. S. 64.

The establishment of the line of 1889 did not exhaust the Secretary's power, but there remained to him authority to change the line when and as often as the demands of navigation in his judgment made it necessary. *Union Bridge Co.* v. *United States, supra; Monongahela Bridge Co.* v. *United States,* 216 U. S. 177, 194; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 638.

The premises directly affected were within high water and harbor lines of a navigable stream, and therefore the Fifth Amendment cannot be invoked.

The Fifth Amendment cannot be invoked where the right of appellant to the use of the river bed was subject to a superior right of the Government, which had been exercised.

Under the dominant right of the Government to improve navigation its engineers could require the removal of anything in the bed of the stream which obstructed navigation. Cases *supra.*

Hence, when appellant constructed the wharf and marine railway within the confines of the stream he did so subject to subsequent action of Congress.

The damages complained of were not the result of direct invasion by the Government, but the incidental consequence of a lawful exercise of governmental power.

The harbor line of March 4, 1889, was only on paper. *Prosser* v. *Nor. Pac. R. R.,* 152 U. S. 59.

Appellant was never ousted from his premises. Whatever damage resulted to him, such as cost of dredging along his marine railroad and a loss of business consequent to the diminished depth of water and his inability to dock large vessels, occurred from the fact that the improvements affected were within the confines of a navigable stream. *Gibson* v. *United States,* 166 U. S. 269; *United States* v. *Bedford,* 192 U. S. 217.

Appellant's contention being predicated upon tortious acts of government officials, the Court of Claims was with-

out jurisdiction. *Langford* v. *United States*, 101 U. S. 341–346; *Bigby* v. *United States*, 188 U. S. 400, 410; *Hill* v. *United States*, 149 U. S. 593, 599.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

Henry F. Willink sued to recover as upon an implied contract for an alleged taking of his property in the improvement of the harbor in the Savannah River at Savannah, Georgia. A recovery was denied, 38 Ct. Cls. 693; 49 Ct. Cls. 701, and the claimant's executrix prosecutes this appeal.

The material facts disclosed by the findings are these: At Savannah the river is navigable and within the ebb and flow of the tide. Opposite the city is Hutchinson's Island, a strip of which on the side towards the city was owned by the claimant. He there conducted a plant for repairing vessels. Among his facilities used in the business were a marine railway and a wharf. The former extended into the river and was protected by sheet piling "where in the water." A substantial portion of it lay below the mean high-water line, and the wharf seems also to have been below that line, although its location is not precisely stated. In the conduct of the claimant's business the vessels subjected to repair were drawn out of the river and lowered into it by means of the railway, and to prevent its lower end, "which was under water at high tide," from becoming seriously obstructed by deposits of mud the piling was driven on both sides. The piling was effectual for the purpose, but decayed in time and had to be replaced.

Prior to 1887 many improvements had been made in the harbor, and in that year a plan for further and extensive improvements was submitted to Congress, but was not approved. Among other changes this plan contem-

plated a widening of the river by cutting away a portion of Hutchinson's Island including that whereon the claimant's facilities were situate. On May 4, 1889, the harbor line, which theretofore had not reached the island or the claimant's facilities, was reëstablished by the Secretary of War, under § 12 of the act of August 11, 1888, c. 860, 25 Stat. 400, 425, in such manner that a part of the claimant's land and all of his facilities were brought within the harbor area. In 1890 another extended project, retaining the earlier proposal to widen the river by cutting away a portion of the island, was submitted to Congress and was approved. The estimated cost of this project was $3,500,000, which included $45,000 for "possible land damages" to the island. A part of the larger sum was appropriated each year until the appropriations equalled the full estimate, which was in 1895. The appropriation of July 13, 1892, c. 158, 27 Stat. 88, 92, was accompanied by a provision that "contracts may be entered into by the Secretary of War for such materials and work as may be necessary to complete the present project of improvement, to be paid for as appropriations may from time to time be made by law, not to exceed in the aggregate" so much of the estimate as remained unappropriated. A contract was then made for cutting away a portion of the island including that whereon the claimant's facilities were situate, but this work never was done or undertaken, and the appropriations were otherwise exhausted and the project treated as completed.

In the summer of 1892 the condition of the claimant's wharf and piling became such that it was necessary to rebuild the one and to renew the other. While he was so engaged the engineer officer in charge of the harbor improvements requested him to desist and to remove all of his facilities that were within the harbor area as defined by the Secretary of War in 1889. The request was followed by a letter from the United States Attorney for

that district notifying the claimant that in driving the piling he was obstructing navigation contrary to the act of September 19, 1890, c. 907, 26 Stat. 426, 454–455, and that unless he desisted and "all piling outside of the bulkhead line" was removed he would be prosecuted. Because of this request and notice he ceased work upon the piling and wharf, but did not remove any of his facilities or surrender them or his land to the United States or any of its officers. On the contrary, he continued to operate his plant and use his marine railway and other facilities as best he could. Theretofore he was able to haul up on the railway and repair vessels of considerable draft, and the chief profit in his business came from that work; but thereafter, the renewal of the piling being prevented, deposits of mud filled up the entrance to the railway to such an extent that he was obliged to confine his work to smaller vessels. Even then it was necessary to be almost constantly dredging the entrance. This condition continued until December, 1897, when the Secretary of War reëstablished the harbor line as it was prior to May 4, 1889. The expense incurred by the claimant in dredging was $7,697 and the loss consequent upon his inability to handle the larger vessels was $12,500.

Upon these facts, as before indicated, the court held that he was not entitled to recover.

We reach the same conclusion, and for the following reasons:

There was no actual taking of any of the claimant's property, nor any invasion or occupation of any of his land. As respects his upland, he was not in any wise excluded from its use, nor was his possession disturbed. Something more than the location of a harbor line across the land was required to take it from him and appropriate it to public use. *Yesler* v. *Washington Harbor Line Commissioners*, 146 U. S. 646, 656; *Prosser* v. *Nor. Pac. R. R.*, 152 U. S. 59, 65; *Philadelphia Co.* v. *Stimson*, 223 U. S.

605, 623. No taking resulted from the request that he remove his facilities, for it was neither acceded to nor enforced. And the contract for cutting away a part of the land was also without effect, because there was no attempt at performance. Thus, at best, the asserted taking rested upon the acts of the engineer officer and the district attorney in preventing the claimant from renewing his piling and rebuilding his wharf. But in this no right of his was infringed. The river being navigable and tidal, whatever rights he possessed in the land below the mean high-water line were subordinate to the public right of navigation and to the power of Congress to employ all appropriate means to keep the river open and its navigation unobstructed. *Gibson* v. *United States,* 166 U. S. 269, 271; *Scranton* v. *Wheeler,* 179 U. S. 141, 163; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 634, 638; *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53, 62; *Lewis Blue Point Oyster Co.* v. *Briggs,* 229 U. S. 82, 88; *Greenleaf Lumber Co.* v. *Garrison,* 237 U. S. 251, 263. The piling and wharf were below the mean high-water line, and so, if navigation was likely to be injuriously affected by their presence, Congress could prevent their renewal without entitling him to compensation therefor. See cases *supra.* By the legislation in force at the time, Congress not only authorized the Secretary of War to establish the harbor lines, but made it unlawful to extend any wharf or other works, or to make any deposits, within the harbor area as so defined, except under such regulations as the Secretary might prescribe, and laid upon the district attorney and the officer in charge of the harbor improvements the duty of giving attention to the enforcement of its prohibitive and punitive provisions, Aug. 11, 1888, c. 860, § 12, 25 Stat. 400, 425; Sept. 19, 1890, c. 907, §§ 11–12, 26 Stat. 426, 455. When the claimant attempted to renew the piling and rebuild the wharf they were not only below the mean high-water line but

within the harbor area as defined under this legislation. Consistently with its prohibitions he could not proceed with the work, except under a permissible regulation of the Secretary of War. It is not contended that the work was thus made permissible, and so the conclusion is unavoidable that the claimant was proceeding in violation of the statute and that the engineer officer and the district attorney rightly requested him to desist. Such inconvenience and damage as he sustained resulted not from a taking of his property, but from the lawful exercise of a power to which it had always been subject. *Gibson* v. *United States, supra,* 276; *Bedford* v. *United States,* 192 U. S. 217, 224.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.