## ATKINSON v. UNITED STATES.

ORMSBY v. SAME (two cases).
Civil Actions Nos. 125, 128–131.

District Court, D. Minnesota,
First Division.
Sept. 11, 1946.

Victor E. Anderson, U. S. Atty., of St. Paul, Minn., and T. H. Wangensteen, Asst. U. S. Atty., of Minneapolis, Minn., for the United States.

Lees & Bunge, of La Crosse, Wis., for petitioners.

NORDBYE, District Judge.

The determinative facts, in so far as the Government's motions to dismiss are concerned, appear in the pleadings and the briefs and apparently are not in dispute. The claims for damages are predicated on two separate and distinct acts of the Government. First, it is contended that the lands were damaged by the Government's construction in 1937 of Dam No. 8 on the Mississippi River at Genoa, Wisconsin, in that the effect of the dam was to back up the water in the channel of said river and raise the river five and one-half feet above its normal level, causing damage to the lands owned by the petitioners. Secondly, it is alleged that the same lands were damaged by the erection of a dam on Pine Creek in 1932. Pine Creek flows past and north of some of these lands and through other lands involved herein. It is alleged that the dam was erected by officers and agents of the United States in furtherance of the Government's program in fostering and protecting wild life, game, and fish, and in the creation of a refuge therefor in the upper Mississippi Valley, as authorized by Section 722 et seq., 16 U.S.C.A. The dam was apparently constructed on lands acquired by the Government, either by purchase or lease under that Act. Under the statute referred to, the Secretary of the Interior was authorized to obtain by purchase, gift, or lease non-agricultural lands in the upper Mississippi area for the purposes indicated.

The Government has interposed three legal defenses: (1) That the complaints fail to state claims within the jurisdiction of this Court; (2) that the complaints fail to state a claim against defendant upon which relief can be granted; (3) that the claims set forth in the complaints did not accrue within six years next before the commencement of these actions.

While it may be doubted that the complaints state a cause of action within the jurisdiction of this Court and upon which recovery may be had (Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, and cases cited therein), in view of the Court's determination that the alleged claims for damages are all barred by the statute of limitations, the other legal defenses need not be discussed.

The dam in Genoa, Wisconsin, was erected in furtherance of the Government's plan to improve navigation on the Mississippi River. Petitioners' lands lie some miles north of the dam, which was completed on April 30, 1937. Although not specifically set forth in the complaint, it is conceded that the full height of the pool opposite plaintiffs' lands was reached on or about May 1, 1937. It is to be gathered from the complaints that the lands were not overflowed in 1937; in fact, it is not alleged that the dam causes any overflowage of the lands except at levels of high water. The complaints set forth that, by reason of heavy rainfall in 1938, the petitioners were prevented from determining whether or not there had been any taking; that is,

they were unable to determine whether the water on their lands was caused from excessive rainfall or the effect of the dam, and it is asserted that they were not able to determine that there was any taking until 1939 as to some tracts and as to others not until 1942. It is the position of the petitioners that these lands are, by reason of the erection of the dam, subject to intermittent flowage and seepage. These actions were brought on September 11, 1944, over seven years after the dam had been completed and the pool raised to its permanent level.

The Government of the United States is not suable without its consent. It has only consented to be sued in the event there was an implied agreement on its part by reason of the taking of petitioners' property. The damages sustained by the owner must be within the contemplation or reasonably to be anticipated by the Government when the dam was erected. If there was no taking of petitioners' property at that time within the meaning of the Fifth Amendment, there can be no recovery under any circumstances.

Any invasion of petitioners' property which is merely consequential or incidental to the improvement of navigation is not compensable under the Tucker Act. Goodman v. United States, 8 Cir., 113 F.2d 914. It is not alleged in the complaints that the river opposite petitioners' property was ever raised by the dam above ordinary highwater mark. It is well settled that the Government is not required to make any compensation on account of damages to lands by reason of the raising of a navigable river up to ordinary highwater mark. Any occasional damage resulting to the lands during heavy rains or spring freshets cannot form the basis for an action against the Government if the pool in its permanent state does not raise the water above ordinary highwater mark. United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 312 U.S. 592, 313 U.S. 543, 61 S.Ct. 772, 85 L.Ed. 1064. The limitations on the Government's liability in raising a navigable river in aid of navigation are clearly set forth in United States v. Meyer, 113 F.2d 387, at page 398, where the court stated:

"It is insisted that the court erred in instructing the jury that for damages caused by raising the water of the river to the ordinary high water mark, the government was not liable. There is no taking from a riparian owner by the Government when water is raised to the ordinary highwater mark for the purpose of improving navigation; whatever rights the owner possesses below ordinary highwater mark are subordinate to the rights of the public. Willink v. United States, 240 U.S. 572, 580, 36 S.Ct. 422, 60 L.Ed. 808; Barr v. Spalding, D.C., W.D.Ky., 1928, 46 F.2d 798, 799, 800. Consequently nothing is due for impairment or use by the United States in the improvement of navigation of property within or over the bed of its navigable waters. Intangible riparian rights are subject to the same servitude. Under the Fifth Amendment mere damage to land not taken is not compensable as an act under the power of eminent domain."

There is a distinction between damage and taking. If there is no taking, there is no basis for any action against the Government. Where the acts of the Government do not cause any encroachment on petitioners' property or any invasion thereof, any incidental damages to riparian landowners are but the results of the lawful and proper exercise of the governmental power in raising the river in aid of navigation and not compensable under the Fifth Amendment.

With these principles in mind, we proceed to consider the Government's contention that these claims are barred by the statute of limitations. The Tucker Act, 28 U.S.C.A. 41(20), provides:

"* * * No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made."

It seems obvious, therefore, that these actions under the Tucker Act must be brought within six years from the date of the taking. The obligation of the Government to pay damages arises upon an implied contract. The promise to pay damages to the landowners must therefore be

implied from that which the Government did. There was nothing which the Government did after May 1, 1937, upon which an implied promise could be based. The contemplated improvement was completed on that date and the raising of the water by reason of the dam had reached its permanent level. If, therefore, there was no taking when the pool was raised to its permanent level, there never would be any taking by the Government, as that term is used in the proceedings to recover damages under the Tucker Act. This view is not at variance with the case upon which petitioners primarily rely, to wit, United States v. Dickinson, 4 Cir., 152 F 2d 865. There, the court determined that the taking did not take place until the pool was raised to its permanent level. In that case, the river, by operation of the dam, was raised by gradual stages, and the court refused to sustain the Government's position that the taking had occurred before the contemplated pool level had been reached. Here, the contemplated raise of five and one-half feet above normal level was reached on May 1, 1937. Petitioners' position that the taking does not take place until the possible advent of high water or flood stage when their lands for the first time may be actually affected by the stage of the river, is not tenable and wholly inconsistent with the theory of the Government's liability in eminent domain on an implied contract under the Fifth Amendment. The intention to invade, and the resulting invasion of petitioners' property, if it ever existed, was completed when the Government finished its project. These cases support the Government's contention in this regard: County Court of Marion County, W. Va. v. United States, 53 Ct.Cl. 120; Stubbs v. United States, D.C., 21 F.Supp. 1007; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; United States v. Dickinson, supra.

■ From what has been stated regarding petitioners' claims based on the erection of Dam No. 8 on the Mississippi River, it seems apparent that petitioners cannot at this late date enforce any alleged claims growing out of the erection of the dam on Pine Creek in the year 1932. Petitioners allege that said dam was built and was maintained by the United States at said point for the purpose of creating a feeding pool as a refuge for fish, wild life, and game. It does not appear that anything has been done by the Government in connection with the raising of the water on Pine Creek since 1932; in fact, it is conceded in the brief that the dam was later taken out. Defendant's answer avers that the dam erected in 1932 was merely a brush dam and was washed out the same year that it was installed. This fact is not denied by petitioners. However, they contend that, while the dam was in, it caused a fill which operated with substantially the same effect as a dam, causing the submergence and taking by overflow of petitioners' lands in the year 1938. But the fill must have been in existence since 1932, when the dam was washed out, and it is not asserted or contended that the fill which the dam is alleged to have caused is being maintained by the Government for any purpose in furtherance of a wild life refuge. At most, the retention of the fill would be an act of an agent or agents of the United States from which no implied contract could arise which would avail these petitioners. The maintenance of a nuisance cannot give rise to any contract liability on the part of the Government. It seems clear, therefore, if there was any taking and any implied promise of the Government based on the erection of this structure to pay damages by reason of the backing up of the water on Pine Creek, the right accrued not later than the date when the dam was completed. According to the petitioners herein, the dam did no harm to any of their lands until 1938 and 1939, and they therefore reason that the date of taking begins in these years. It may be reiterated that the liability of the Government must be one of contract, not tort, in order for the Court to have jurisdiction under the Tucker Act. There must be acts which resulted in a taking which was within the reasonable contemplation of the Government. The Government did nothing after 1932 from which any implied contract promise can arise, or anything to indicate that any taking thereafter was contemplated or intended. If petitioners did have any rights growing out of the construction of the dam and the damage to

their property thereafter, such rights accrued in 1932, some twelve years before these actions were commenced.

In view of the foregoing, it necessarily follows that these actions must be dismissed, and it is so ordered. An exception is reserved to the petitioners and each of them.