## KANSAS CITY LIFE INS. CO. v. UNITED STATES.

### No. 45430.

Court of Claims.

Dec. 1, 1947.

WHITAKER, Judge, dissenting.

Stanley Bassett annd Ray B. Lucas, both of Kansas City, Mo., for plaintiff.

Ralph S. Boyd, of Washington, D. C., and A. Devitt Vanech, Asst. Atty. Gen. (William H. Churchwell, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and MADDEN, HOWELL, LITTLETON and WHITAKER, Judges.

MADDEN, Judge.

The plaintiff sues to recover compensation for harm allegedly done to the plaintiff's interests by the construction by the Government of Lock and Dam No. 26 in the Mississippi River near Alton, Illinois. The suit relates to 1,710 acres of land owned by the plaintiff, lying near the Mississippi River, and bounded on the north by a railroad embankment and on the east, south, and west by a loop levee. Before the construction of Lock and Dam No. 26, the land, though flat and low, was several feet higher than the normal surface of the water in the Mississippi and in Dardenne Creek which passed by the plaintiff's land and emptied into the river a short distance away. The land was in a private drainage district and was ditched and tiled, and had large tubes passing through the levee to drain surface water into the creek. Since it was a few feet higher than the usual water level in the creek, its underground water also drained into the creeek.

The construction of Lock and Dam No. 26 raised the level of the water in the river and the creek, when the pool behind the dam was filled in 1938, to 420.4 feet above mean sea level, which was approximately the altitude of ordinary high water level before the construction of the lock and dam. We have found that the consequence of this raising of the water level in the creek has been to shut off the flow of some of the tubes leading through the levee and thereby prevent the surface water from draining off some of the land. A more serious consequence, however, has been that it has prevented water in the strata underneath the plaintiff's land from draining away, thus keeping the underground water within one, two, or three feet from the surface of different portions of the plaintiff's land, thereby impairing its value for farming.

The plaintiff justifies its suit first, as a claim arising out of an Act of Congress and second, as a claim founded upon

the Constitution for just compensation for a taking of its property. In support of its first theory the plaintiff points to the reports of the Army Engineers relating to the effects upon nearby lands of the construction of the series of Locks and Dams in the Mississippi River, including Lock and Dam No. 26. Our findings 5 to 11 relate to these reports. These reports show that the Army Engineers thought that it would be cheaper for the Government to acquire ownership of some 1,254 acres of the plaintiff's land and tile and ditch 366 additional acres which would be damaged by the proposed project than to pay the cost of keeping all of the land in use as agricultural land. The plaintiff then points to the Act of August 26, 1937, Public No. 392, 75th Congress, 50 Stat. 844, 848, in which Congress authorized certain rivers and harbors work, and, with respect to the project involving Lock and Dam No. 26, provided: "Mississippi River between Missouri River and Minneapolis, Minnesota: The existing project is hereby modified in accordance with the recommendation of the District Engineer in the report submitted in Rivers and Harbors Committee Document Numbered 34, Seventy-fifth Congress."

This is all the legislation to which the plaintiff can point. The Government did not, in fact, purchase or acquire by eminent domain a portion of the plaintiff's land, as the Army Engineers had recommended, or ditch and tile another portion, as they had recommended. It just went ahead and built its lock and dam. The plaintiff still owns its land. We think that the legislation quoted above, while it might have constituted an authorization to acquire some of the plaintiff's land by eminent domain, and to spend money in tiling and ditching another part of it, does not constitute a Congressional waiver of immunity from suit or confession of liability for the consequences of building the dam.

■ We pass, then, to the question of whether there has been a taking of the plaintiff's land within the meaning of the Constitution. The plaintiff relies strongly upon the case of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. In that case this court and the Supreme Court held that the United States by regularly flying planes over Causby's land at so low an altitude that it became impossible to use the land as a chicken farm, though it was still possible to use it for many other purposes, had "taken" an interest in the land in the nature of an easement, and was, under the Constitution, obligated to compensate Causby according to the scope and duration of the interest taken. This case shows that in the thinking of the courts, the idea of a "taking" in the constitutional sense is not limited to the assertion of one of a closed list of normal interests in land, such as easements of passage along the surface of land, easements of flowage, constant or intermittent, profits à prendre to take minerals or other substance from land, etc. In the Causby case the Supreme Court, in remanding the case to this Court, directed this court to describe with precision the interest taken by the Government and its duration, so that there may be no doubt as to what the Government will own when it has paid its judgment.

■ The plaintiff says that the Government's raising of the level of the water in Dardenne Creek to the point where the tubes from the plaintiff's land through the dike no longer carry off the surface water, and where the bed of the creek, formerly nearly dry in most seasons, does not carry off the underground water from the plaintiff's land, amounts to a "taking" of an interest in the plaintiff's land. We think that the plaintiff's contention is sound. One of the valuable incidents of the plaintiff's ownership, before the dam was built, was that the surface and underground water passed off his land leaving it available for profitable agriculture. That incident has now been impaired, in order to benefit navigation on the Mississippi. It is the kind of an incident of ownership that could have been granted by the plaintiff to the Government or a neighbor, the privilege of holding surface and underground water in the plaintiff's land, to its detriment as agricultural land. Such a grant would have created a burden in rem upon the plaintiff's land, which would have passed to subsequent owners and bound them. We see no real difference between burdening the land by

artificially flooding it with water, which has often been held to be a taking,[1] and converting it into a pond or a marsh by preventing the surface water which falls on it or flows on it from higher land from leaving it by either surface or underground drainage. We think that the fact that the change in the nature of the plaintiff's land has been accomplished principally by erecting a water barrier at its margin, preventing egress of water, rather than by causing the invasion of the land by water from outside, should not be the deciding factor.

The problem of the present weight of the case of United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746, arises. Dardenne Creek, which loops around the plaintiff's land and which furnished its natural drainage of surface and underground water, was a nonnavigable stream. But it empties into the Mississippi only about a mile and a half from the plaintiff's land. Cress's mill, the usefulness of which was destroyed by the raising of the water level in his case, was located on a nonnavigable stream. He was allowed to recover. The court's discussion in that case indicated that property owners even on the navigable river which was being directly improved by the dam in question there, were entitled to compensation for their interests destroyed by the raising of the water level. But the Court in United States v. Chicago, M., St. P. & P. R. Co., 312 U.S. 592, 61 S.Ct. 772, 775, 85 L.Ed. 1064, held that the Government, in the improvement of the navigability of a navigable stream, could with impunity raise the water level permanently to the ordinary high-water mark, and that owners on the navigable stream whose property was inundated thereby could not recover. The court said "What was said in the Cress case must be confined to the facts there disclosed."

In the case of Willow River Power Co. v. United States, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 561, the court held that a power company which had dammed a nonnavigable stream at the point where it flowed into a navigable stream in order to produce power from the fall of the water from the pool created by the dam to the natural level of the water in the navigable stream, was not entitled to compensation when the Government raised the level of the navigable stream to the point where the fall was not sufficient to create as much power as before.

These cases may indicate that the Cress case does not have a good prospect of survival. But it has not been overruled. In the instant case, as in the Cress case, the harm was done by the raising of the water level in a nonnavigable stream, and the Government was not privileged, in the improvement of the navigability of the Mississippi, to "take" without compensation the interest which we have discussed above in the plaintiff's land on Dardenne Creek.

The plaintiff is entitled to recover $22,-519.60.

It is so ordered.

JONES, Chief Justice, and HOWELL and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

I am unable to concur in the opinion of the majority. Whatever might have been the plaintiff's right to recover if the level of the Mississippi River had been raised above high-water mark, it is settled by numerous cases in the Supreme Court that it is not entitled to recover for any damage to its property, or for the destruction of it even, if the river is not raised above the high-water mark. United States v. Chicago, Milwaukee, St. Paul & P. Railroad Co., et al., 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064, and cases there cited; also Willink v. United States, 240 U.S. 572, 36 S.Ct. 422, 60 L. Ed. 808; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 62, 63, 33 S.Ct. 667, 57 L.Ed. 1063; and other cases cited in the opinion of this court in Kelley's Creek & Northwestern Railroad Co. v. United States, 100 Ct.Cl. 396. The findings in this case show that the level of the Mississippi River was not raised above high-water mark. If it was not, the injury

---

[1] Pumpelly v. Green Bay & Mississippi Canal Co., 13 Wall. 166, 20 L.Ed. 557; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann. Cas. 680; United States v. Dickinson, 4 Cir., 152 F.2d 865, affirmed 67 S.Ct. 1382.

to plaintiff's property is damnum absque injuria.

The majority opinion says, however, that this rule does not apply since this property was not on the riverbank of the navigable stream, but on a nonnavigable tributary. It says this holding is required by United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746. The authority of this case has been twice limited to its particular facts (United States v. Chicago, Milwaukee, St. Paul & P. Railroad Co., supra; United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 561); but the majority says it has not been overruled and that the present case is governed by it, since plaintiff's property was not on the riverbank of the navigable stream but on a nonnavigable tributary.

This, it seems to me, makes no difference. If the Government is immune from damage to a plaintiff's property situated on the bank of the river because it was below high-water mark, why should it not be also immune from damage to property on an estuary of the river a mile distant from the riverbank, if it also was below high-water mark of the navigable river? If the rule as to property on the riverbank is correct, it seems to me that it is a necessary corollary that property distant from the riverbank but within its flow also comes within the rule.

Water insists on finding its own level. It climbs an embankment if it has no outlet; if it has an outlet it flows into it; the water "backs up" into the estuary until the water in it and in the river is on the same level. This it does in the river's natural state in times of high water, and continuously after a dam has been erected. In the natural state of the river the land on an estuary is no less inundated in times of high water than the lands adjacent to the riverbank. What the dam does is to make continuous what nature did only intermittently; but the effect on property on the bank and on the estuary is exactly the same.

Why the defendant should be immune from liability for damage to the one and liable for damage to the other I am wholly unable to see.

I cannot imagine that the Supreme Court intended to draw such a distinction. It does not appear from the opinion in United States v. Cress, supra, whether or not the level of the navigable river was raised above high-water mark. I assume it was, since, otherwise, it appears to me this opinion would be clearly in conflict with the cases cited in United States v. Chicago, Milwaukee, St. Paul & P. Railroad Co., supra, and others.

At any rate, I am unwilling to conclude that this opinion means to draw such a distinction which to me seems so wanting in reason or logic. Unless we ascribe to it such an intention, it is clearly in conflict with later, as well as earlier, decisions of the Court.

It may be true that the original rule is wrong, that as an incident to the power to regulate commerce between the States, the Government can raise the constant level of a navigable river to its high-water mark without incurring liability to property owners on the banks of the river whose property is thereby continuously inundated, whereas before it was subject only to intermittent overflows; but if this rule is to be adhered to then it must follow that it does not incur liability to a property owner whose property is on an estuary of the river but within its flow in high water in the river's natural state.

The original rule is so firmly implanted in the decisions of our courts that it should not be overturned except by Act of Congress. That being the law, I think this plaintiff is debarred from recovery.