**Frank J. KONECNY, Appellant,**

v.

**UNITED STATES of America and Red Lake Drainage & Conservancy District, Appellees.**

**No. 18789.**

United States Court of Appeals Eighth Circuit.

Dec. 12, 1967.

Whitney E. Tarutis, Bemidji, Minn., for appellant.

William M. Cohen, Attorney, Land & Natural Resources Division, Dept. of Jus-tice, Washington, D. C., for appellees; Edwin L. Weisl, Jr., Asst. Atty. Gen., and S. Billingsley Hill, Attorney, Washington, D. C., and Patrick J. Foley, U. S. Atty., Minneapolis, Minn., and Lloyd E. Boline, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Minnesota dismissing the claim of Frank J. Konecny against the United States for the alleged taking and damaging of his property resulting from the construction and operation of the Red Lake-Clearwater River Flood Control Project.

■ On March 3, 1964, Konecny commenced an action against the United States Army Corps of Engineers and the Red Lake Drainage and Conservancy District, a public corporation of Minnesota. On June 11, 1964, the District Court by Order dismissed the action as to the Corps of Engineers and the Drainage District, and made the United States party defendant. Subsequently, the United States brought in the Drainage District as a third-party defendant because of an indemnification agreement between them.[1]

The United States filed a Motion to Dismiss or in the Alternative for Summary Judgment. On August 3, 1966, the District Court ruled that Konecny had no claim for relief under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)[2]

---

1. Konecny argues in his brief that the District Court erred in its Order of June 11, 1964, and that the Drainage District is a primary defendant because of the agreement between the District and the United States whereby the former assumed all liability for damages arising out of operation of the Red Lake-Clearwater River Flood Control Project. If the District be a primary defendant in this action, then the courts of the United States would not have jurisdiction because of a lack of diversity of citizenshp. However, we think the court's ruling was correct as the United States constructed the dam and was operating it. The Drainage District had no authority or responsibility for the dam's actual operation.

2. Title 28 U.S.C. § 1346(b), in pertinent part, states:
 " * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States * * * for injury or loss of property, or personal injury or death

because no "wrongful" or "negligent" acts within the scope of the Act were alleged that did not "clearly fall within the discretionary function exception of the Tort Claims Act, 28 U.S.C. § 2680 (a)."[3], but refused to dismiss or grant summary judgment as the alleged taking and damaging of Konecny's property could constitute a valid claim for relief under the Tucker Act, 28 U.S.C. § 1346 (a) (2).[4] The District Court then held a hearing in order to rule on the question of whether Konecny's claim under the Tucker Act was barred by the jurisdictional time limit of six years applicable to Tucker Act claims under 28 U.S.C. § 2401(a).[5] This hearing was held on January 4, 1967. On January 11, 1967, the District Court entered a Judgment of Dismissal against Konecny because he did not bring his action within six years from the time it accrued as re-

quired by § 2401(a), and hence the Court found it was without jurisdiction.

The land that Konecny owns is located on the shore of the Upper Red Lake in Beltrami County, Minnesota. Upper Red Lake is connected to Lower Red Lake by a natural channel about one mile wide. Red Lake River, the principal tributary of the Red River of the North, has its source at the outlet of Lower Red Lake. In 1931 the United States constructed a dam at the outlet of Lower Red Lake in order to regulate both Lower and Upper Red Lakes and to control the flooding of rivers below the Lakes. From 1931 until 1951 the operation of the dam was supervised by the Bureau of Indian Affairs. Since 1951 operation and control of the dam has been by the United States Army Corps of Engineers. During the period 1947–1951[6] the dam was modified by re-

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. Title 28 U.S.C. § 2680, in pertinent part, states:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.*" (Emphasis supplied).

4. Title 28 U.S.C. § 1346(a) (2), in pertinent part, states:

"The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: * * * (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, * * * or upon any express

or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

5. Title 28 U.S.C. § 2401(a), in pertinent part, states:

"(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. * * * *"

6. On December 22, 1944 the Congress of the United States approved The Federal Control Act which authorized The Red Lake-Clearwater River Federal Control Project which provided for the regulation of Upper and Lower Red Lakes and the channel rectification of portions of The Red Lake-Clearwater River, in substantial accordance with the recommendation of the Chief of Engineers. The Project included modification of the water control structure on Lower Red Lake to obtain positive control of the outflow from Upper and Lower Red Lakes, and to maintain the Lake levels as near consistent as practicable. The proposed plan of operation was based on a normal pool at 1174.0 feet, mean sea level datum (1912), exclusive of wind and seiche effect. This congressional project of 1944 anticipated and contemplated the flooding of shoreline properties on the Lakes and the United States requested the Drainage District to obtain flowage easements up to an

placing the three wooden gate outlets in the dam with steel gates, thus increasing the flow of water from the Lakes when desired.

Konecny has lived along Upper Red Lake since 1942, purchasing his land in 1948. Konecny alleges that due to the operation of the dam his shore line is being washed out and that water from Upper Red Lake is, and has been, moving up and taking his property, and that he is entitled to be compensated for damage to his property that has occurred within a six-year period of the filing of his complaint.

■■■ In asserting any claim against the United States, the claimant must recognize the established principle of law that "The United States, as sovereign, is immune from suit save as it consents to be sued [citations omitted] and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); State of Minnesota v. United States, 305 U.S. 382, 388–389, 59 S.Ct. 292, 83 L.Ed. 235 (1938). The United States Congress has with regard to the Federal Tort Claims Act and the Tucker Act defined the terms and conditions under which the United States has waived immunity to suit, and jurisdiction can vest in a court to hear a claim brought against the United States. To recover under either of these Acts, the claimant must bring his cause of action within the jurisdictional limits of the court that he desires to entertain his action. As expressed in State of Minnesota v. United States, at 388 of 305 U.S., at 295 of 59 S.Ct.: "[I]t rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought."

Konecny alleges that the District Court erred in dismissing his complaint for damages based on the Tort Claims Act for lack of jurisdiction by ruling as a matter of law that the alleged wrongful acts of the United States clearly fell within the discretionary function exception of the Act. Konecny notes that under § 1346(b) of the Tort Claims Act, the United States can be liable as a private person would be liable in accordance with the law of the place where the act or omission occurred that caused injury or damage. He asserts that as the United States would be liable for the damages he alleges under the laws of Minnesota, he should be afforded his "day in court" to offer evidence to prove his case. Konecny argues that the discretionary function exception is not applicable since there was no discretion vested to keep the level of the Lake at the height that caused him damage.

■■ The District Court did not err in dismissing Konecny's claim based on the Tort Claims Act. The burden was on Konecny to frame a pleading sufficient to support the District Court's jurisdiction. Rule 8(a), Fed.R.Civ.P. In Coates v. United States, 181 F.2d 816, (8 Cir. 1950), plaintiffs brought a cause of action based on the Tort Claims Act alleging that the United States, by changing the course of the Missouri River, caused damage to their crops. This Court, in affirming the District Court's dismissal for want of jurisdiction, stated at p. 817:

"It would be difficult if not impossible to point to any example of exercising and performing discretionary functions and duties on the part of federal agencies more clearly within the exception of the Federal Tort Claims Act than the changing of the Missouri River under legislative and executive sanction pursuant to political and discretionary decisions of the highest governmental order on which the plain-

elevation of 1177.0 feet on private lands above the Red Lake Indian Reservation on Upper Red Lake. No flowage easements were obtained and a taking would

occur at full reservoir, with a further taking when flooding conditions occurred that could not be expeditiously accommodated at the outlet control of the dam.

tiffs have chosen to base their claim of negligence in this case. We have found no merit in their contention that their claims stated in their complaint may be found to fall within the jurisdiction conferred by the Act."

In noting the legislative history of the Act and the applicability of the exception to suits for flood damages, the Court in Coates significantly set out the House Judiciary Committee Report at p. 818:

" 'This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity, such as a flood-control or irrigation project, where no negligence on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious, or that the statute or regulation authorizing the project was invalid.' "

The same portion of the House Committee Report was quoted with approval by the United States Supreme Court in Dalehite v. United States, 346 U.S. 15, 29, 73 S.Ct. 956, 97 L.Ed. 1427 (f.n. 21) (1952) in that Court's discussion of the scope of the exception. Further, at Dalehite, supra, 36–37, at 968 of 73 S.Ct. (f.n. 32), the Supreme Court noted:

"The courts that have passed upon the application of § 2680(a) to suits under the Tort Claims Act have interpreted the exception of discretionary functions, generally, in conformity with our holding that negligence in policies or plans for authorized governmental activities cannot support damage suits.

" * * * In Coates v. United States, 8 Cir., 181 F.2d 816, damages were sought for injury to crops and land from the action of the Government in negligently changing the course of the Missouri. It was held that no jurisdiction existed under the Act."

In United States v. Gregory, 300 F.2d 11, 99 A.L.R.2d 1011 (10 Cir. 1962), the court held that the discretionary function exception applied to a claim for damages resulting to plaintiff's property from the drainage of his ponds into recently cleared irrigation ditches under the control of the United States. And, in United States v. Ure, 225 F.2d 709 (9 Cir. 1955), the exception precluded a theory of recovery under the Act where plaintiffs suffered flooding damage because of the decision of a governmental agency not to line a canal throughout, but only in locations where particular conditions obtained.

Therefore, the District Court correctly dismissed Konecny's claim based on the Tort Claims Act, since even if Konecny were able to prove his allegations, such proof would not support jurisdiction under the Federal Tort Claims Act.

Konecny also alleges that the District Court erred in dismissing his claim under the Tucker Act for want of jurisdiction, again contending that he was denied his "day in court" to prove his damage in that the District Court decided as a matter of law that he failed to bring his suit within six years of the time his cause of action first accrued and the alleged taking of his property occurred. Konecny argues that he is only asking for injury to his property occurring after 1958, even though the cause of his injury arose prior thereto.

Although the District Court did conclude as a matter of law that Konecny's claim under the Tucker Act had to be dismissed because the claim was not brought within the jurisdictional time limit imposed by § 2401(a), the conclusion and dismissal followed a finding of fact by the Court that Konecny's "cause of action accrued, and the 'taking' of his property, if any, occurred prior to the year 1958." This finding of fact was determined after a plenary hearing on the issue. Konecny was provided a "day in court" to present facts demonstrating that his cause of action accrued within six years of his first bringing suit in 1964.

■ The evidence supporting the District Court's finding of fact is persua-

sive. During the six-year period 1958 through 1964, the United States Geological Survey's highest measured level of the Red Lakes (in terms of mean sea level) was in 1962 when the reading at the dam was 1176.52 feet. From 1942 through 1950, the water level of the Red Lakes was consistently higher than it was afterward, the Geological Survey's datum showing highest levels of 1177.23 feet in 1943, 1176.72 feet in 1944, 1176.84 feet in 1945, 1177.25 feet in 1947, and 1178.53 feet in 1950. After 1950, the level of the Lakes was lower, primarily because the log gates at the dam were replaced by steel gates in 1951, allowing greater flowage through the dam.[7]

On cross-examination, Konecny admitted that his property had been subjected to yearly damage due to high water from 1943 to the present, specifically admitting that in 1950 the water damage was worst—" * * * [I]n 1950 took the whole high ridge off and then come right close to the house and started digging there." Edward Hudec, a neighbor of and witness for Konecny, responded on cross-examination that he had observed Konecny's property from 1945 on, and that the property was subjected to flooding and "some damage" during the period from 1945 to 1958.

Konecny's evidence was directed toward showing that while prior to 1958 there was a washing of the beaches and the shoreline, after 1958 the water has been progressively moving in destroying new areas of property. Douglas Barr, a consulting hydraulic engineer, testified that the lake levels from 1951 through 1958 were quite similar to "natural lake levels," but that beginning in 1959 the Lake levels grew consistently higher through the period of his study which ended in 1962. (However, the highest levels during the period 1958–1962 (1176.52 in 1962) is lower than the highest level of 1943 (1177.23), 1944 (1176.-72), 1945 (1176.84), 1947 (1177.25), and 1950 (1178.53)).

 The issue decided by the District Court and now being reviewed by us is when did Konecny's right of action

7. *Maximum Elevation of the Red Lakes*

| Water Year (Begins in Oct. and ends in Sept. of year designated) | Highest Elevation in Feet (In terms of elevation above mean sea level) |
|---|---|
| 1939 | 1174.78 |
| 1940 | 1175.76 |
| 1941 | 1176.11 |
| 1942 | 1175.56 |
| 1943 | 1177.23 |
| 1944 | 1176.72 |
| 1945 | 1176.84 |
| 1946 | 1176.32 |
| 1947 | 1177.25 |
| 1948 | 1176.23 |
| 1949 | 1176.05 |
| 1950 | 1178.53 |
| 1951 | 1176.20 |
| 1952 | 1175.10 |
| 1953 | 1175.05 |
| 1954 | 1175.13 |
| 1955 | 1175.40 |
| 1956 | 1174.95 |
| 1957 | 1175.78 |
| 1958 | 1174.97 |
| 1959 | 1174.97 |
| 1960 | 1175.04 |
| 1961 | 1174.83 |
| 1962 | 1176.52 |
| 1963 | 1175.70 |
| 1964 | 1175.33 |

first accrue? This Circuit has held that "generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another * * *" Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997, 1001 (8 Cir. 1965). "A cause of action accrues at the time when an action thereon can be commenced." Pettibone v. Cook County, Minn., 120 F.2d 850, 854 (8 Cir. 1941). This is in accord with the general rule expressed in 54 C.J.S. Limitations of Actions § 109, that a cause of action accrues as soon as the right to institute and maintain a suit arises.

The Government concedes that it is often difficult to determine precisely when an injury occurs and a cause of action accrues in cases where there is a physical taking by water, but that in Konecny's case a precise determination is not necessary because of the evidence of the water levels over the years and by virtue of Konecny's own testimony as to the frequency and times of flooding. The Government cites United States v. Dickinson, 152 F.2d 865, 867 (4 Cir. 1946), aff'd 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), to support its position: "* * * [W]hen a permanent structure erected by government authority results in the invasion of or damage to land, only one right of action arises and this accrues upon the completion of the structure and the happening of the injury, and in this action, all damages, past, present and prospective are recoverable." In affirming Dickinson, supra, the Supreme Court took a somewhat less rigid approach: "Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in the course of time." 331 U.S. at 748, 67 S.Ct. at 1385.

In United States v. Dickinson, supra, the flooded landowners' claims were not barred by the six-year limitation statute. By operation of a dam the Government gradually raised the water level of a river behind the dam, and the taking of property flooded by the river was held not to have occurred until the pool behind the dam (and, hence, the height of the river) was raised to its permanent level.

In Atkinson v. United States, 68 F. Supp. 99 (Minn.1946), the court stressed the fact that the taking of property by reason of the raising of the water level in a channel behind a dam occurred when the dam was completed and the raising of the water by reason of the dam reached its permanent level. The court disallowed actions brought seven years after the dam was completed even though intermittent flowage and seepage allegedly caused damage to landowners' property along the channel within six years of their bringing suit.

In Cravens v. United States, 163 F. Supp. 309 (Ark.1958), landowners' claims for damages caused by a flooding river were held not barred by the six-year limitation on bringing claims, even though the dam which regulated the downstream level of the river was constructed more than ten years prior to their suit. The first time that water was permitted to run over the spillway of the dam was within two years of plaintiffs' suit. The Court reasoned (p. 316) that the taking occurred at that time, since it was not until the overflow that "plaintiffs knew or had reason to know" that their property would be damaged.

We believe that the above cases support the District Court's finding that Konecny's cause of action accrued prior to 1958. A servitude over Konecny's property was acquired well before 1958 as evidenced by the water level readings and Konecny's own admission as to the frequency of flooding. The situation under which Konecny could expect his property to be flooded stabilized well before 1958.

Konecny's contention that he can recover for damages occurring within the six-year limitation, even though the cause of the injury occurred and the full reservoir pool had been reached

prior to such six-year period is not well taken. He cites no authority for this view and the District Court found that Konecny's injury, and hence the accrual of his cause of action, occurred over six years prior to his bringing suit.

Under Rule 52(a), Fed.R.Civ.P., "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The District Court's finding that Konecny's cause of action accrued prior to 1958 is not clearly erroneous. In fact this finding appears to be inescapable on the Record, and the District Court, therefore, lacked jurisdiction to consider the claim.

Judgment affirmed.