**BELL v. APACHE MAID CATTLE CO.**
**et al.**

**No. 8433.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1938.

Norris & Patterson, and W. E. Patterson, all of Prescott, Ariz., and Strouss & Salmon, Charles L. Strouss, and Riney B. Salmon, all of Phoenix, Ariz., for appellant.

James E. Babbitt, Wilson, Wood & Compton, C. B. Wilson, Chandler M. Wood, Orinn C. Compton, and Chas. B. Wilson, Jr., all of Flagstaff, Ariz., for appellees.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant with leave of court filed an amended bill of complaint which appellees moved to dismiss upon the grounds that said amended bill (a) did not state facts sufficient to constitute a cause of action at law or in equity, (b) was wholly without equity, (c) did not state facts sufficient to entitle plaintiff to relief by way of specific performance of the contract alleged, (d) did not state facts sufficient to entitle plaintiff to any relief, (e) upon its face shows that the contract alleged was the basis of the action is illegal, void, and unenforceable, and (f) that it appears from said amended bill that the cause of action is stale.

The motion of appellees to dismiss the amended bill of complaint was granted by the court below and a decree of dismissal was entered from which this appeal is taken.

In addition to the facts vesting the court with jurisdiction, the material allegations of the amended complaint set forth that prior to January 31, 1931, the appellant was the owner of certain real property adjacent to, and certain improvements on, the Coconino National Forest in Arizona, and was the owner of 40 head of cattle ranging and running on said forest under permits from the United States Forestry Service.

That at the same time the appellees were the owners of 283 acres of patented land adjacent to, and improvements on, said National Forest, and possessed the right under permits from the United States Forestry Service to graze 3,174 head of cattle on said National Forest.

That on or about January 31, 1931, the appellant entered into an agreement with the appellees whereby, "subject to the consent and approval of the United States Forestry Service and the officials thereof * * * defendants would sell, convey and deliver to plaintiff [appellant herein] their

said patented lands and the said improvements on said Forest, together with sufficient range and area on said Forest to graze, run and maintain throughout the year no less than 960 head of cattle net by relinquishing from their said permit on said Forest sufficient range and area to so graze, run and maintain said number of cattle; and that the plaintiff [appellant herein] would purchase the same and pay to defendants [appellees herein] therefor the sum of $16.00 per head for said cattle, the sum of $4700 for improvements, and the sum of $2830 for said patented land, or a total of $22,890."

Continuing, the amended complaint alleges:

"That at the time of entering into said contract and prior thereto said Forest Service had, unknown to the plaintiff, informed defendant, Apache Maid Cattle Company, that it would be required to reduce its number of cattle and grazing preference because of the overgrazed condition of said Forest; and at the time of entering into said contract, defendants, and each of them, well knew and understood that unless defendants fully met and absorbed the reduction required by said Forest Service out of other of their said cattle running on said Forest the requirements of said Forest Service would extend to and affect the relinquishment of range for the grazing and running of 960 head of cattle to be acquired by plaintiff pursuant to said contract, by greatly reducing the number of cattle said plaintiff would actually be permitted to graze, run or maintain on said Forest, and defendants further knew and understood at said time that, in order for said defendants to comply fully with the terms of said contract and to relinquish to plaintiff sufficient range and area on said Forest to graze and run 960 head of cattle and to cause same to be allotted to him by said Forestry Service, they would in fact have to relinquish many more than said number, all of which was unknown to plaintiff, and all of which was at all times concealed by the defendants from the plaintiff."

The complaint then alleges that the plaintiff paid to defendants the total amount provided to be paid by said contract and otherwise fully performed all of its terms; and in reliance upon the contract plaintiff expended a large sum of money in the erection of fences, developments of water, and installation of other necessary improvements on the range and area on said Forest

Reserve relinquished by defendants to graze and maintain 960 actual head of cattle.

The complaint further alleges:

"That said defendants on their part conveyed said patented land and said improvements in this amended complaint mentioned to plaintiff as required by the terms of said contract and pretended to relinquish sufficient range on said Forest to graze, run and maintain 960 head of cattle, and defendants advised and informed plaintiff that they had executed the necessary instruments whereby said Forest Service did allot to him range and area on said Forest sufficient to graze, run and maintain 960 head of cattle, net, as provided in said contract, but, due to said reduction in the number of defendants' cattle running on said Forest, as so ordered by said Forest Service, and the failure of defendants to absorb said reduction out of their remaining cattle on said Forest, the said pretended relinquishment of 960 head of cattle was reduced by 320 head, and said defendants did in fact relinquish, and said Forest Service did allot to plaintiff, range and area sufficient to graze, run and maintain not more than 640 head of cattle, all of which was well known to, and understood by the defendants, and each of them, at the time of said pretended relinquishment. That during the month of October, 1933, plaintiff for the first time discovered the deception and fraud so practiced upon him by said defendants, and that defendants had not fully performed the terms of their said contract; that plaintiff thereupon immediately demanded of the defendants, and each of them, that they make further and proper relinquishment of additional area and range on said Forest in order that there might be transferred by the Forest Service to plaintiff range and area sufficient to graze, run and maintain 960 head of cattle on said Forest as provided for in said contract and as paid for by plaintiff; but defendants, and each of them have failed, neglected and refused so to do, although during all times in this amended complaint mentioned, said defendants, and each of them, have been, and are now, well able to fully perform the terms of said contract on their part to be kept and performed."

"That the United States Forestry Service and the officials thereof have heretofore consented to, and approved and do now consent to the relinquishment by defendants of range on said Forest sufficient to graze, run and maintain 960 actual head of cattle,

and the granting and alloting of same by said Forest Service to plaintiff."

In reviewing the ruling of the District Court, we must have in mind certain regulations made by the Secretary of Agriculture, governing the National Forests, which in their proper sphere are given the force and effect of statutory enactments. 16 U.S.C.A. §§ 471, 472, 551; United States v. Grimaud, 220 U.S. 506, 514, 31 S.Ct. 480, 55 L.Ed. 563; Light v. United States, 220 U.S. 523, 534, 31 S.Ct. 485, 55 L.Ed. 570. Regulations G-2 and G-9 are printed in the margin.[1]

There is no law which gives an individual or corporation the right to graze stock upon National Forest lands except under the regulations promulgated by the Department of Agriculture. To secure a permit to graze stock, the applicant must have certain prescribed qualifications and be the owner of certain classes of property. Before any permit is granted, a formal application therefor must be made furnishing the Forest Service with the required information. There is no allegation that appellant made such application or that any application was denied. It is reasonable to assume that where new or additional grazing rights are desired, applications therefor are made and granted prior to the grazing season for the year intended.

According to the amended complaint, the contract was made in January, 1931, presumably to be effective that year as the relinquishment of range for grazing was designated to be sufficient to maintain 960 head of cattle "throughout the year." No other year is mentioned, and since whatever relinquishment appellees did make was at the time the deal was consummated, obviously the relinquishment was intended for that year and no other.

Appellant entered into possession of the relinquished areas and he was not disturbed in any of his asserted rights until October, 1933, which is the date he alleges to have first discovered that any of his actual or supposed rights were to be curtailed.

Appellant knew or was required to know that under the regulations appellees could not convey grazing rights to him. All they could do was to relinquish. Appellant, after entering into the contract, should then have made his application to the Forest Service which alone had authority to make any allotment. If he had done so, he doubtless would have received a letter approving the relinquishment and making or refusing to make the allotments before the grazing season of 1931, certainly before 1932.

Appellant actually took possession of grazing area under the contract in 1931, and for all that appears he may have grazed the full quota of cattle thereon during the intervening time and until October, 1933, when he alleges he first discovered the number was reduced.

The allegation is not that the appellees failed to waive a preference to graze 960 head of cattle covered by their permit but that they pretended to and that the relinquishment for 960 head was reduced to 640 head by the Forest Service which had the authority so to do.

Appellant's argument is equivalent to the contention that the contract required appellees, for an indefinite future time, to relinquish from their grazing rights whatever amount might be necessary at various times to supply area sufficient for appellant to graze 960 head of cattle. When we note, that according to the regulations, grazing privileges are entirely under the control of the Forest Service which from year to year may vary the number of animals permitted to graze, that the number may be diminished or even prohibited, it seems to us that it would be unreasonable to so construe this contract.

---

[1] Reg. G-2: "Every person must submit an application and secure a permit in accordance with these regulations before his stock can be allowed to graze on a national forest, except as hereinafter provided and unless otherwise authorized by the Secretary of Agriculture. The Forester may authorize the issuance of grazing permits for a term of years within a maximum of 10 years. A term permit shall have the full force and effect of a contract between the United States and the permittee. It shall not be reduced or modified except as may be specifically provided for in the permit itself and shall not be revoked or cancelled except for violation of its terms or by mutual agreement. The grazing regulations shall be considered as a part of every permit."

Reg. G-9: " * * * A grazing preference is not a property right. Permits are granted only for the exclusive use and benefit of the persons to whom they are issued and will be forfeited if sold or transferred in any manner for a valuable consideration."

If we assume that the contract, instead of providing for the relinquishment of the grazing privileges for the year 1931 and sufficient for 960 head of cattle, was to be a continuing obligation for an indefinite time in the future, the court would be confronted with still greater difficulties. The allotment of grazing area is exclusively for the Forest Service. The courts cannot interfere with this prerogative. It is a fact, as the prescribed regulations also indicate, that the number of cattle the range will support varies from year to year and also that different areas will furnish grazing for different numbers of cattle. The Forest Service might not agree with the court as to the extent and character of range required to graze 960 head of cattle. Furthermore, there is no description of the range rights of the appellees which appellant seeks to have relinquished or conveyed. No method is suggested how the range can be identified, and as the Forest Service has the authority to reduce the allotment even if a decree were entered, it is uncertain if it would effectuate the purpose.

So many of the elements involved are so indefinite and uncertain that the lower court properly held that the facts stated did not entitle appellant to a decree of specific performance.

The decree of the District Court is affirmed.