**OSBORNE et al. v. UNITED STATES.**

No. 10755.

Circuit Court of Appeals, Ninth Circuit.

Nov. 24, 1944.

Woolf & Shute, of Phoenix, Ariz., for appellants.

Norman M. Littell, Asst. Atty. Gen., Frank E. Flynn, U. S. Atty., and Charles A. Carson, Sp. Atty., Dept. of Justice, all of Phoenix, Ariz., and Vernon L. Wilkinson and S. Billingsley Hill, Attys., Dept. of Justice, both of Washington, D. C., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit judges.

STEPHENS, Circuit Judge.

The Osbornes, appellants herein, were in possession of a contiguous area of stock grazing land consisting of land owned by them, land leased by them, and land in the Kaibab National Forest under permit (36 Code of Federal Regulations, § 231.9) issued to them. Before the institution of this litigation the national forest land under permit was declared appropriated for military purposes.[1] All of such contiguous lands, except certain rights therein which need not here be noticed, were included in one eminent domain proceeding filed in the district court by the government, and the government promptly took possession.

At the trial the Osbornes sought to prove, and by proffered instructions sought to have the jury instructed to award them, damages for the value of their grazing privileges covering the national forest land taken and as well damages for severance. The court rejected such proof and such proffered instructions, and the Osbornes appeal claiming reversible error.

The error claimed does not in any manner refer to the court's rejection of proof but refers solely to the refusal of the court to give a proffered instruction and to the instruction given the jury concerning compensation and variance damages regarding the lands under the grazing permit. The government makes no point upon this score and submits the decision of the appeal upon the jury instruction points.

It was the theory of the government at the trial, and is here, that the grazing privileges were mere licenses, revokable at will without legal right to compel compensation, and that the Osbornes' only recourse is to proceed under the Act of July 9, 1942, C. 500, 56 Stat. 654, 43 U.S.C.A. § 315q. The trial court took this view of the problem. In § 315q it is provided that holders of grazing permits losing the license by government taking shall be paid such amounts " * * * as the head of the department * * * using the lands shall determine to be fair and reasonable * * * " and that " * * * such payments shall be deemed payment in full * * * " and that " * * * nothing herein [in the Act] contained shall be construed to create any liability not now existing against the United States." [2] On the other hand appellants, admitting the statutory right to apply to the Secretary of War for relief under such Act, claim that they acquired property by the issuance to them of the grazing permit and that they may rightly claim just compensation in the condemnation suit. They claim that the Secretary of War by the complaint did submit the fixing of such damages to the court in the instant case. The Osbornes assert that they will be deprived of the benefits of the Fifth Amendment to the Constitution unless they are allowed their day in court upon the issue of compensation. The benefit of that right, say appellants, quoting from United States

---

[1] Public Land Order No. 59, November 12, 1942, 7 Fed. Reg. 9749, issued by the Secretary of the Interior under authority of Executive Order No. 9146, withdrew the land involved in this case "from all forms of appropriation under the public-land laws * * * and reserved [it] for the use of the War Department for military purposes." The applicable part of Title 50 U.S.C.A. Appendix, § 632, sec. 2 (Second War Powers Act of 1942, § 201) is as follows: "The Secretary of War * * * may acquire by purchase, donation, or other means of transfer, or may cause proceedings to be instituted in any court having jurisdiction of such proceedings, to acquire by condemnation, any real property, temporary use thereof, or other interest therein, together with any personal property located thereon or used therewith, that shall be deemed necessary, for military, naval, or other war purposes * * * upon or after the filing of the condemnation petition, immediate possession

may be taken and the property may be occupied, used, and improved for the purposes of this Act * * *."

[2] "Sec. 315q. Whenever use for war purposes of the public domain or other property owned by or under the control of the United States prevents its use for grazing, persons holding grazing permits or licenses and persons whose grazing permits or licenses have been or will be canceled because of such use shall be paid out of the funds appropriated or allocated for such project such amounts as the head of the department or agency so using the lands shall determine to be fair and reasonable for the losses suffered by such persons as a result of the use of such lands for war purposes. Such payments shall be deemed payment in full for such losses. Nothing herein contained shall be construed to create any liability not now existing against the United States." Title 43 U.S.C.A. § 315q.

v. Miller, 317 U.S. 369, 63 S.Ct. 276, 279, 87 L.Ed. 336: " * * * means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken."

Of course, if 56 Stat. 654, 43 U.S.C.A. § 315q, is appellants' exclusive legal remedy, they cannot succeed in their appeal. It would appear that Congress understood the statute to constitute the sole remedy for those having their permit revoked as the Assistant Attorney General recommending its passage said: "Damages of this kind are not recoverable under the ordinary rules of law in a condemnation case because the stockmen have no vested interest in these rights. If such payments are to be made, provision therefor must be enacted by Congress." H.Rep. No. 2290, 77th Cong., 2d Sess. And the remarks of Senator Murdock in regard to the meaning of the proposed Act when it was being considered for enactment (88 Cong.Rec. 5594), and of Representative Robinson in this same regard (88 Cong. Rec. 5652), indicate that the view-point of these members of the Congress corresponds with that of the Assistant Attorney General.

We digress at this juncture to sketch briefly the applicable legal history of stock grazing on the public lands of the United States. In the pioneer or "emigrant" days of western America immense areas of unappropriated and otherwise unused territory were freely used by stockmen for grazing. The government not only refrained from objecting to this practice but in various ways encouraged it and in time this privilege, to use the words of the Supreme Court in Buford v. Houtz, 133 U.S. 320, 326, 10 S.Ct. 305, 307, 33 L. Ed. 618, became " * * * an implied license, growing out of the custom of nearly a hundred years * * *." This license was held to be the basis of various rights as between the licensee and other private individuals but not as between the licensee and the government. The same idea is expressed in Light v. United States, 220 U.S. 523, 535, 31 S.Ct. 485, 487, 55 L.Ed. 570, wherein, after reciting the practice, it is said: "And so, without passing a statute, or taking any affirmative action on the subject, the United States suffered its public domain to be used for such purposes. There thus grew up a sort of implied license that these lands, thus left open, might be used so long as the government did not cancel its tacit consent. * * * Its failure to object, however, did not confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes. Steele v. United States, 113 U.S. [128], 130, 5 S.Ct. 396, 28 L.Ed. 952; Wilcox v. Jackson [ex dem. McConnel], 13 Pet. [498], 513, 10 L.Ed. [264]." The principle expressed in Buford v. Houtz, supra, as reasserted in the Light case and again in Omaechevarria v. Idaho, 246 U.S. 343, 352, 38 S.Ct. 323, 327, 62 L.Ed. 763, is applied to grazing privileges in national forest regulations, for both the Light and the Omaechevarria cases concern grazing within national forests. In the last cited case it is said: "Congress has not conferred upon citizens the right to graze stock upon the public lands. The government has merely suffered the lands to be so used. [Citing] Buford v. Houtz, supra. It is because the citizen possesses no such right, that it was held by this court that the Secretary of Agriculture might, in the exercise of his general power to regulate forest reserves, exclude sheep and cattle therefrom. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570." See Shannon v. United States, 9 Cir., 160 F. 870, 873; Bell v. Apache Maid Cattle Co., 9 Cir., 94 F.2d 847.[3]

Later the Congress (Title 43 U.S.C.A. §§ 315 and 315b) authorized the creation of grazing districts upon the public domain but not including areas within national forests and provided for the issuance of permits with a maximum duration of ten years and quoting from § 315b, Title 43, U.S.C.A., declared " * * * but the creation of a grazing district or the

---

3 Shannon v. United States, 9 Cir., 160 F. 870, 873: "But the lands included in a forest reservation are no longer public lands within the purport of that decision [Buford v. Houtz, supra], and the act of the government does forbid their use. The creation of such a reservation severs the reserved land from the public domain, disposes of the same, and appropriates it to a public use. Wilcox v. [Jackson ex dem.] McConnel, 13 Pet. 498, 10 L.Ed. 264." This case would seem to indicate a different line of reasoning but we think the same end would be reached.

issuance of a permit pursuant to the provisions [providing therefor] shall not create any right, title, interest, or estate in or to the lands."

It may well be added for clarity that no specific provision is made by Congress for the issuance of permits for stock grazing in national forests and that it is assumed in the cases that the general right of grazing on public lands continues after they have been declared within a forest reserve subject to the authorization to the Secretary of Agriculture to make regulations for the preservation and care of the growth in the forests.

Under the last above referred to power a regulation (36 Code of Federal Regulations, § 231.9) was promulgated, providing in general terms that the grazing of stock within national forests is made subject to rules and regulations, which may be established. The next following section prescribes certain terms for grazing, and we quote the applicable part: "§ 231.2—Permits must be obtained; ownership of stock. Every person must submit an application and secure a permit in accordance with the regulations in this part before his stock can be allowed to graze on a national forest, except as hereinafter provided and unless otherwise authorized by the Secretary of Agriculture. The Chief of the Forest Service may authorize the issuance of grazing permits for a term of years within a maximum of 10 years. A term permit shall have the full force and effect of a contract between the United States and the permittee. It shall not be reduced or modified except as may be specifically provided for in the permit itself and shall not be revoked or canceled except for violation of its terms or by mutual agreement. The grazing regulations shall be considered as a part of every permit. All stock grazed under said permit on national forest must be actually owned by the permittee."

■ It will be noted that the above quoted section of the Regulation contains the following: "A term permit shall have the full force and effect of a contract between the United States and the permittee." No authorization for such provision can be found in any Congressional Act, and its literal meaning cannot be valid. We are of the opinion that by such provision the government means that it will regard the terms of its permit as binding between it and other permit seekers. Regulations exceeding statutory authority are void. United States v. Doullut, 5 Cir., 213 F. 729, 736; United States v. Utah Power & Light Co., 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; United States v. City and County of San Francisco, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050.

■ The government in its brief refers to the last two sentences of § 231.9, 36 Code of Federal Regulations, and argues that it is a declaration to the effect that a permit is not property. The sentences are: "A grazing preference is not a property right. Permits are granted only for the exclusive use and benefit of the persons to whom they are issued." The construction given this in the brief cannot be successfully maintained. The "grazing preference" does not refer to the permit. Permits are exclusively for the permittee and are not assignable. When the permittee sells cattle presently grazing on national forest lands a grazing preference will be given the purchaser over others seeking permits. It is this preference that the regulation refers to as not being a property right.

■ Since the transfer of the status of open public lands to that of national forest lands does not change the rights of stock grazing therein, except that the forest reserve service may make and enforce regulations appropriate to the preservation of the natural growth therein and may therefor exclude grazing entirely or regulate it appropriately to the benefit of such natural growth, it would seem to follow that a permit[4] or limited right of grazing granted by the service would not act

---

4 Permits or licenses to graze livestock in the national forests are issued by the Forest Service under rules and regulations promulgated by the Secretary of Agriculture. 36 Code of Federal Regulations, sec. 231; Bell v. Apache Maid Cattle Co., 1938, 9 Cir., 94 F.2d 847. Authority for the regulations is found in the Act of June 4, 1897, c. 2, 30 Stat. 11, 35, as amended February 1, 1905, c. 288, 33 Stat. 628, 16 U.S.C.A. § 551, which provides that: " * * * he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon

to perfect any property right as against the sovereign. No grant of United States property may be made except by virtue of Congressional authorization (Art. 4, § 3, Const.; Shannon v. United States, supra), and the mere authority given the forest service to make appropriate regulations carries with it no authority to alienate for any period of time any phase of government right over the full use of its lands or to make any agreement regarding them subject to the payment of compensation for its revocation.

It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing, either under the original tacit consent or, as to national forests, under regulation through the permit system, as a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation. Indeed concessions to individuals for the use of public property or the enjoyment of rights peculiar to the sovereign have been consistently construed with strictness against the concessionee and in favor of the sovereign.[5]

We hold, therefore, that the judgment must be affirmed.

We desire to add that we are not impressed with the government's argument that the sum or any part thereof appropriate to be awarded to the appellants by the Secretary of War, was in fact awarded by the jury under the court's instructions.

Affirmed.

---

from destruction." The rules and regulations made pursuant to and consistent with the authority conferred by that Act have the force and effect of law. McFall v. Arkoosh, 1923, 37 Idaho 243, 215 P. 978, 979; Bell v. Apache Maid Cattle Co., 1938, 9 Cir., 94 F.2d 847.

[5] Numerous instances are to be found where permits issued by a sovereign are highly valuable as between private persons but which may be revoked by the sovereign without the payment of compensation: e.g. bridge franchises, Louisville Bridge Co. v. United States, 1917, 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395; United States v. Wauna Toll Bridge Co., 1942, 9 Cir., 130 F.2d 855; licenses to erect river and harbor structures, United States v. Chica-go, M., St. P. & P. R. Co., 1941, 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064; Willink v. United States, 1916, 240 U.S. 572, 36 S.Ct. 422, 60 L.Ed. 808; Greenleaf Johnson Lumber Co. v. Garrison, 1915, 237 U.S. 251, 35 S.Ct. 551, 59 L.Ed. 939; United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 70, 33 S.Ct. 667, 57 L.Ed. 1063; Berger v. Ohlson, 1941, 9 Cir., 120 F.2d 56; permits to erect and maintain telephone and power lines, Swendig v. Washington Co., 1924, 265 U.S. 322, 44 S.Ct. 496, 68 L.Ed. 1036; United States v. Colorado Power Co., 1916, 8 Cir., 240 F. 217, 220; licenses to occupy, lease, or sell fishing areas, Lewis Blue Point Oyster Cultivation Co. v. Briggs, 1913, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083.