Grant M. ACTON et al., Appellants,

v.

UNITED STATES of America, Appellee.

V. W. CLIFTON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 21980, 21980–A.

United States Court of Appeals Ninth Circuit.

Oct. 4, 1968.

Rehearing Denied in 21980–A Nov. 7, 1968.

Rehearing Denied in 21980 Feb. 11, 1968.

Certiorari Denied March 3, 1969.

See 89 S.Ct. 1003.

Thayer C. Lindauer (argued), Phoenix, Ariz., for appellants.

V. W. Clifton (argued), Elyria, Ohio, Clyde O. Martz, Asst. Atty. Gen., Stephen C. Glassman, Land & Nat. Resources Div., A. Donald Mileur, Jacques B. Gelin, Washington, D. C., Edward E. Davis, U. S. Atty., Richard S. Allemann, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before CHAMBERS and ELY, Circuit Judges, and VON DER HEYDT *, District Judge.

VON DER HEYDT, District Judge.

This action was originated by the United States, appellee herein, in condemnation of certain property interests under Title 40 U.S.C. Section 257, and Title 10, U.S.C. Section 2663. The appeal is taken from the District Court's summary judgment entered November 3, 1966, declaring that the cancellation by the United States of appellants' revocable uranium prospecting permits was not a taking of property under the Fifth Amendment to the Constitution of the United States for which the United States must compensate appellants.

The facts are these:

The Congress, seeking to develop adequate sources of uranium materials within the continental United States, enacted the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq. In doing so, Congress recognized that private funds and initiative would be required for such development and authorized a public appeal to individuals to prospect and develop uranium ore bodies on public lands of the United States.

Following enactment of the Atomic Energy Act of 1954, appellants, defend-

---

* Hon. James A. von der Heydt, United States District Judge, Anchorage, Alaska, sitting by designation.

ants below, prospected for uranium ore in the area of the Muggins Mountains of Western Arizona. Prior to that time, on July 1, 1952, Public Land Order No. 848 [1] had withdrawn all public domain within this area from all forms of appropriation under the Public Land Laws, including mining and mineral leasing laws.

Valuable ores were discovered by the various appellants who located claims under the mining laws of Arizona. Source material licenses from the Atomic Energy Commission were obtained by the spring of 1956.

By early 1958, the appellants had located a substantial number of claims in the area noted. It is uncontroverted that they expended substantial time and funds in the development of the claims, particularly for building roads, geological surveys, and the equipment needed in the preparation of the claims and to further actual mining operations.

The Department of the Army commenced the condemnation proceedings which are the subject of this action on January 15, 1958. When it filed its condemnation suit, the Government joined the appellants as defendants because certain records indicated that each appellant had claimed some type of interest. Also joined, among others, were numerous parties who, according to the records, had filed claims under the Taylor Grazing Act. Subsequently, the Government filed a motion to dismiss these particular defendants, alleging that they had been improperly joined since they had no compensable rights in the property. The district judge denied the motion "without prejudice to renewal at a later date." The District Court's ultimate granting of the Government's motion for summary judgment as against the appellants was based upon the ground which had been asserted in the previous motion to dismiss.

Subsequent to January 15, 1958, appellants applied for Atomic Energy Commission exploration permits, which permits were issued, and accompanied by a reservation in favor of the Commander, Yuma Test Station, reading as follows:

"5. The Commander, Yuma Test Station, shall have the right to withdraw this right of entry either in whole or in part at any time as he deems it required by military necessity. Such withdrawal may be only temporary or permanent and may be without prior notice, in which event it is agreed that evacuation will be made with the greatest possible expediency, as to personnel and equipment."

Shortly after issue, the Commander of the Yuma Test Station, under the provisions of the reservation, terminated the prospecting permits. Thus, the uranium prospecting permits never reached maturity by the Atomic Energy Commission's issuance of preferential right leases, as normally would have occurred in the absence of such revocation. No compensation has ever been paid appellants.

Because of these events, the appellants joined forces to prosecute their claims for compensation. The litigation encompasses an extended period of time eventually culminating in the filing of cross motions for summary judgment. As earlier indicated, the trial court granted appellee's motion and this appeal followed.

Appellants specify error as follows:

1. The District Court erred in finding appellants' interests in the lands in question were that of a revocable right of entry.

2. The District Court erred in its ruling that the interests of appellants' land in question were not an interest compensable under the laws of condemnation.

Since the assignments of error to a large extent are interrelated, they will be considered together in the general discussion which follows.

Appellants request this Court to exercise its "powers in equity" and "recognize" the value of the ore bodies located,

1. 17 Fed.Reg. 6099, published July 8, 1952.

---

the great expense to appellants, and declare their interests to be recognizable in condemnation. We are unable to do so.

While it is unfortunate, from the appellants' standpoint, that they lost whatever they may have gambled, it is clear that they were made fully aware of the uncertainty which was incident to their enterprise. As the District Court observed: "The defendants acquired the permits with full knowledge of the risks to be incurred." To reverse the findings of the trial court, we must ignore the great weight of authority upon the issues raised.

■ It is fundamental that when the United States takes private property for public use the Fifth Amendment requires payment of just compensation. This obligation, however, recognizes only vested property rights, and not the tenuous rights of licenses and permits, even though these at times may have value.

There have been cases in which certain unique interests have been recognized as private property and thus compensable within the meaning of the Fifth Amendment.[2] Unfortunately, appellants' situation does not fall reasonably within any of these circumstances.

■ The weight of authority is to the contrary. The Supreme Court, for example, has held that a tenant whose lease contained a "termination on condemnation" clause had no right to compensation in a condemnation proceeding.[3]

We find appellants herein, as in *Petty,* have "no right which persists beyond the taking and can be entitled to nothing."[4]

■ It is clear that a license does not constitute property for which the Government is liable upon condemnation, and passes to the licensee no estate or interest in the lands.[5]

■ Appellee correctly notes the parallel which exists between appellants' prospecting permits and grazing permits upon public lands granted by virtue of the Taylor Grazing Act.[6] Grazing permits create no interest or estate in public lands, only a privilege which may be withdrawn. No property rights accrue to the licensee upon revocation which are compensable in condemnation.[7]

Many permits issued by the United States have value as between private persons, but they may be revoked without payment of compensation. We refer particularly to the language of this court in *Osborne:*[8]

Numerous instances are to be found where permits issued by a sovereign are highly valuable as between private persons but which may be revoked by the sovereign without the payment of compensation: e. g. bridge franchises, Louisville Bridge Co. v. United States, 1917, 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395; United States v. Wauna Toll Bridge Co., 1942, 9 Cir., 130 F.2d 855; licenses to erect river and harbor structures, United States v. Chicago, M., St. P. & P. R. Co., 1941, 312

2. United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), in which an estate or tenancy for years or at will was recognized as "private property." See also United States v. Honolulu Plantation Co., 182 F.2d 172 (C.A.9, 1950), cert. denied, 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602, and Brooklyn Eastern Dist. Terminal v. City of N. Y., 139 F.2d 1007, 152 A.L.R. 296 (C.A.2, 1944), cert. denied 322 U.S. 747, 64 S.Ct. 1158, 88 L.Ed. 1579.

3. United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946). See also United States v. Marks, 187 F.2d 724 (C.A.9, 1951), cert. denied, 342 U.S. 823, 72 S.Ct. 42, 96 L.Ed. 622.

4. 327 U.S. at 376, 66 S.Ct. at 599.

5. McNeil v. Seaton, 108 U.S.App.D.C. 296, 281 F.2d 931 (1960). Sinclair Pipe Line Co. v. United States, 287 F.2d 175 (Ct. Cl.1961).

6. 43 U.S.C. § 315 et seq.

7. United States v. Cox, 190 F.2d 293, 294, 296 (C.A.10, 1951), cert. denied, 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652; Osborne v. United States, 145 F.2d 892 (C.A.9, 1944); Bowman v. Udall, 243 F.Supp. 672, 678 (D.C.1965), aff'd 124 U.S.App.D.C. 283, 364 F.2d 676, sub nom. Hinton v. Udall (1966).

8. 145 F.2d at 896, fn. 5.

U.S. 592 [313 U.S. 543], 61 S.Ct. 772, 85 L.Ed. 1064; Willink v. United States, 1916, 240 U.S. 572, 36 S.Ct. 422, 60 L.Ed. 808; Greenleaf Johnson Lumber Co. v. Garrison, 1915, 237 U.S. 251, 35 S.Ct. 551, 59 L.Ed. 939; United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 70, 33 S.Ct. 667, 57 L.Ed. 1063; Berger v. Ohlson, 1941, 9 Cir., 120 F.2d 56, [10 Alaska 84]; permits to erect and maintain telephone and power lines, Swendig v. Washington [Water Power] Co., 1924, 265 U.S. 322, 44 S.Ct. 496, 68 L.Ed. 1036; United States v. Colorado Power Co., 1916, 8 Cir., 240 F. 217, 220; licenses to occupy, lease, or sell fishing areas, Lewis Blue Point Oyster Cultivation Co. v. Briggs, 1913, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083.

The Court in *Cox*, referring to the grazing permits before it, acknowledged their value, stating as follows:[9]

Unquestionably, the grazing permits were of value to the ranchers. They were an integral part of the ranching unit—indeed, the fee lands are practically worthless without them. But, "the existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be." Reichelderfer v. Quinn, 287 U.S. 315, 319, 53 S.Ct. 177, 178, 77 L.Ed. 331. The Constitution requires only that the sovereign pay just compensation for that which it takes, "not for opportunities which the owner may lose." United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 282, 63 S.Ct. 1047, 1056, 87 L.Ed. 1390. Just compensation for that which is taken does not include consequential losses to owner. Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90

L.Ed. 729; United States v. Willow River Power Co., 324 U.S. 499, 510, 65 S.Ct. 761, 89 L.Ed. 1101; United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336. "Such losses may be compensated by legislative authority, not by force of the Constitution alone." United States v. Willow River Power Co., supra, 324 U.S. at page 510, 65 S.Ct. at page 767, 89 L.Ed. 1101.

* * * But, in our view, there can be no legally significant difference in the withdrawal of the permits for war purposes by the Secretary of the Interior, as in the Osborne case, and the cancellation of the permits by a declaration of taking in condemnation proceedings. *In either case, the Government, by appropriate action, has exercised its unquestionable power to take only that which it owns, and in which the condemnee has no compensable interest.* * * * (Emphasis supplied.)

Appellants urge that the Atomic Energy Act of 1946, as amended,[10] requires the United States in condemnation to pay for the revocation of a right to enter. While it is true Section 171 of the Act requires that just compensation be awarded for property or interests therein taken or requisitioned, appellants overlook the fact that they held only licenses which, as previously noted, do not fall within the meaning of private property under the Fifth Amendment.[11]

Since appellants held revocable prospecting permits which were not property rights for which compensation must be paid under the Fifth Amendment upon withdrawal, summary judgment was correctly entered against them.

Appellant Clifton separately has raised additional issues alleging error below. We have examined these and find them to be without merit.

The judgment is affirmed.

---

9.  190 F.2d at 295.

10.  68 Stat. 952, 42 U.S.C. § 2221.

11.  United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943).