**LAKE BERRYESSA TENANTS' COUNCIL, by Louis P. Tersini, on his own behalf, and all others similarly situated, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, United States Department of Interior, Bureau of Reclamation, and Robert A. Wier, Defendants-Appellees.**

No. 76–1630.

United States Court of Appeals, Ninth Circuit.

Nov. 30, 1978.

Peter E. Tiernan, Frank P. Nicoletti, San Jose, Cal., for plaintiffs-appellants.

Larry A. Boggs, Atty. of Dept. of Justice, Washington, D. C., for defendants-appellees.

Before BROWNING and ANDERSON, Circuit Judges, and WATERS,* District Judge.

PER CURIAM:

This class action was brought by the Lake Berryessa Tenants' Council against the United States, the Department of the Interior, the Bureau of Reclamation, and Robert A. Wier. The appellants challenge the government's action in ordering the removal of all privately-owned docks and certain houseboats from Lake Berryessa. The contentions made by the appellants raised basically four separate claims for relief:

(1) It was an unconstitutional taking of their property.

(2) The government should be estopped from denying their interests.

(3) The agency's action was arbitrary, capricious, and contrary to law.

(4) It was a major federal action and so an Environmental Impact Statement should have been prepared.

After making extensive findings of fact, the district court entered summary judgment in favor of the various federal defendants. This appeal followed and we affirm the decision of the district court.

* The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

## FACTUAL BACKGROUND

Since the 1950's the United States has owned Lake Berryessa and the surrounding shoreline as part of the United States Department of the Interior, Bureau of Reclamation, Solano Project. The lake was formed in 1957 when Monticello Dam was completed.

In 1958 the Bureau of Reclamation entered into a management agreement with Napa County of the State of California whereby Napa County would administer and develop recreational facilities at the lake. The agreement was rewritten in 1962, and pursuant to its terms, Napa County was to develop the lake in accordance with the Public Use Plan prepared by the National Park Service in 1959. Napa County allowed seven concessionaires to develop resorts on the lake. The agreements between Napa County and the resort owners were all made subject to the management agreement between Napa County and the United States. Provisions were included in the management agreements and each of the concession agreements that the various concession agreements would remain effective if Napa County and the United States were to terminate the management agreement.

In 1974, Congress passed the Reclamation Development Act which authorized the Secretary of the Interior to develop, operate, and maintain recreational facilities at the lake.[1] It further empowered the Secretary to administer the lake and surrounding land to provide for (in his opinion) the best public recreational use and enjoyment.

Napa County withdrew from its management role at the lake on July 1, 1975. The Bureau of Reclamation, with Robert A. Wier as recreation manager at the lake, assumed the management function for the United States.

The Bureau of Reclamation issued Operational Policy 1 which restricted the use of houseboats on Lake Berryessa. This was followed by Operational Policy 2 whereby the Bureau ordered the removal of all privately-owned floating structures (docks, berths, swim floats, and so forth) from Lake Berryessa which were not owned by the seven resort owners. It was these policy directives which form the basis of this action.

## UNCONSTITUTIONAL TAKING

■ The district court found that there was no unconstitutional taking involved in the government's order requiring removal of the private, non-resort-owned floating structures from the lake. The appellants have shown no legally cognizable right or interest in the maintenance of their personal property on the federally-owned lake which might give rise to their claim of a "taking" by the government. No law authorized the installation of the private structures, nor did the management agreements between the United States and Napa County, or Napa County and the resort owners. Appellants cite no authority in support of their claim. In similar situations, the courts have not found the government's action to have been an unconstitutional taking.[2]

1. Reclamation Development Act, Public Law 93–493, Title VI, Solano Project Recreational Facilities, California:

"Sec. 601. In order to provide for the protection, use and enjoyment of the esthetic and recreational values inherent in the Federal lands and waters of Lake Berryessa, Solano project, California, the Secretary of the Interior is hereby authorized to develop, operate, and maintain such short-term recreation facilities as he deems necessary for the safety, health, protection, and outdoor recreational use of the visiting public; to undertake a thorough and detailed review of all existing developments and use on Federal lands to determine their

compatibility with preservation of environmental values and their effectiveness in providing needed public services; to implement corrective procedures when necessary; and to otherwise administer the Federal land and water areas associated with said Lake Berryessa in such a manner that, in his opinion, will best provide for the public recreational use and enjoyment thereof, all to such an extent that said use is not incompatible with other authorized functions of the Solano project."

2. This court is aware of only one decision which even suggests that there may be a cause of action in a similar situation. *United States v. 967.905 Acres of Lands, etc., Cook Co.,*

In *Whitefoot v. United States*, 293 F.2d 658, 155 Ct.Cl. 127 (1961), *cert. denied*, 369 U.S. 818, 82 S.Ct. 629, 7 L.Ed.2d 784, the Court of Claims was presented with an analogous situation. Whitefoot had installed cableways along the Columbia River which he charged others to use for fishing. The cableways were on land owned by the United States. Because of the completion of The Dalles Dam, the entire area was going to be flooded. Prior to the flooding, Whitefoot removed his cableways and brought an action to recover for the value of installation and his prospective profits from the cableways. The Court of Claims rejected Whitefoot's claim. The Court found the value of the cableways existed at the sufferance of the United States. Whitefoot had no claim to the land. When the government withdrew its permission for Whitefoot's cableways, he did not become entitled to compensation. Whitefoot's position is exactly on point with that of the dock and houseboat owners at Lake Berryessa. The United States Government owns all of the land and the water at Berryessa. The docks and houseboats have been allowed there only at the sufferance of the United States. The fact that the government has now requested removal does not create a cause of action for an unconstitutional taking in the dock and houseboat owners. They are not being deprived of any property for they can remove any personal property in which they have an interest.

A decision by this court also supports our holding that the appellant houseboat and dock owners have no interest which would support any claim for an alleged "taking" by the government. *Acton v. United States*, 401 F.2d 896 (9th Cir. 1968), *cert. denied*, 395 U.S. 945, 89 S.Ct. 2018, 23 L.Ed.2d 463. In *Acton* various appellants who had received uranium prospecting permits sought compensation after the cancellation of their permits. In denying the right to compensation, this court reasoned as follows:

"It is fundamental that when the United States takes private property for public use the Fifth Amendment requires payment of just compensation. This obligation, however, recognizes only vested property rights, and not the tenuous rights of licenses and permits, even though these at times may have value."

401 F.2d at 899. The appellants in the present case certainly show no greater rights and interests than those claimed by the permittees in *Acton*. In the present case, the appellants show no colorable interest or estate in public lands. There was no "taking" by the government which would afford any relief to the appellants.

ESTOPPEL

 Appellants argue that the government should be estopped from making them remove their docks and houseboats from Lake Berryessa. The only action shown by the appellants which resembles a representation by government officials was that Napa County officials had issued building permits to some of the dock owners. There is no showing of affirmative representations by any government official that a reasonable man would believe gave him either a right or an interest in regard to the installation of a dock, houseboat or any other floating structure. This makes the present case distinguishable from *United States v. Wharton*, 514 F.2d 406 (9th Cir. 1975). The estoppel claim by appellants is more similar to the claim in *United States v. Cappaert*, 508 F.2d 313 (9th Cir. 1974), *aff'd*, 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976). In *Cappaert* we quoted the following language from *United States v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), which is equally applicable to the estoppel claim here:

*Minn.*, 305 F.Supp. 83 (D.Minn.1969), *rev'd on other grounds, United States v. 967,905 Acres of Land, etc., State of Minn.*, 447 F.2d 764 (8th Cir. 1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1193, 31 L.Ed.2d 248. Compensation was ultimately awarded; however, the floating barges

were found to be an integral part of the real property which was taken by condemnation, making it distinguishable from the present case. *Pete v. United States*, 531 F.2d 1018, 1033, 209 Ct.Cl. 270 (1976).

"The Government . . . and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act."

332 U.S. at 40, 67 S.Ct. 1658, as quoted in 508 F.2d at 319. In view of the facts of the present case, we hold that the failure of the government to take any action before 1975 insofar as removing the floating structures does not create a situation where estoppel will lie against the government. *See also United States v. Kaiser Aetna,* 584 F.2d 378 (9th Cir. 1978), the opinion below, 408 F.Supp. 42, 54–55 (D.Haw.1976), and *United States v. Ruby Company et al.,* 588 F.2d 697 (9th Cir. 1978).

## AGENCY ACTION

■ The district court found that there was no showing of an abuse of administrative discretion by the defendants or that the defendants' actions were arbitrary, capricious, or contrary to law.

It is undisputed that Lake Berryessa and the surrounding land are owned by the United States Government. The property clause of the Constitution gives Congress the power to ". . . make all needful Rules and Regulations respecting . . . Property belonging to the United States." Art. IV, Sec. 3, cl. 2. This power granted to Congress by the property clause has been given an expansive interpretation by the courts. In *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976), the Supreme Court stated:

"And while the furthest reaches of the power granted by the Property Clause have not yet been definitively resolved, we have repeatedly observed that '[t]he power over the public land thus entrusted to Congress is without limitations.'" (citations omitted)

\* \* \* \* \* \*

". . . the Property Clause gives Congress the power over the public lands 'to control their occupancy and use, to protect them from trespass and injury, and to prescribe the conditions upon which

others may obtain rights in them . . .'" (citations omitted)

426 U.S. at 539–540, 96 S.Ct. at 2291–92.

The Reclamation Development Act, § 601, authorized the Secretary of the Interior, in part, "to implement corrective procedures when necessary; and to otherwise administer the Federal land and water areas associated with said Lake Berryessa in such a manner that, in his opinion, will best provide for the public recreational use and enjoyment thereof . . . ." *See* footnote 1, *supra.* We need not decide the question of whether § 601 means that the questioned action was unreviewable because it was "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2) and *Ness Inv. Corp. v. U. S. D. A.,* 512 F.2d 706, 713–715 (9th Cir. 1975). On the record before the court, there was no evidence to support appellants' contention that the questioned action in ordering the removal of the houseboats was arbitrary, capricious or contrary to any statutory or constitutional provisions.

## ENVIRONMENTAL IMPACT STATEMENT

■ The National Environmental Policy Act (NEPA) (42 U.S.C. § 4321, et seq.) requires that an Environmental Impact Statement be prepared "in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(c). The district court found that the change in recreation management from Napa County to the United States, and the adoption of any policies (explained *supra*) by the United States did not constitute major federal actions having a significant effect on the quality of the human environment, within the meaning of NEPA, and its requirements. We agree that the change in management, the policy requiring removal of the privately-owned floating structures, and restricting the use of houseboats, were not major federal actions which would require the preparation of an Environmental Impact Statement. The appellants have of-

fered no evidence which could support a contrary finding. We do not address the necessity of a NEPA statement under the hypothetical situation in the environmental report prepared for appellants and in the affidavit of Ted C. Fairfield (C.R. 331–359). The affidavit of Robert Wier points out the mistaken premises upon which that report and affidavit were based. C.R. 417–420. The government, through the Wier affidavit, also admits that an Environmental Impact Statement may be needed when other policies are proposed for the lake. C.R. 420. Appellants show no sufficiently mature proposal for a major federal action which would justify court intervention at this time. *See generally Kleppe v. Sierra Club,* 427 U.S. 390, 405–406, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

The judgment of the district court is affirmed.