154 F.3d 1103
 29 Envtl. L. Rep. 20,099, 98 Cal. Daily Op.
Serv. 7126,
98 Daily Journal D.A.R. 9837
 FOUNDATION FOR HORSES AND OTHER ANIMALS, a California
non-profit corporation; Lynne Sherman; Barbara
Werger; Wendy Penke; and Beverly
McCurdy, Plaintiffs-Appellants,
v.
BRUCE BABBITT, Secretary of the Interior, United States
Department of the Interior; Roger Kennedy, Director of the
National Park Service, in his official capacity; Timothy
Setnicka, Superintendent of Channel Islands National Park,
in his official capacity; Thomas Gherini, Personally and as
Executor of the Estate of Pier Gherini; John Gherini; Pier
Gherini, Jr.; Ellen Reis; and Marie Ringrose, Defendants-Appellees.
 No. 98-55148.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 6, 1998.
Decided Sept. 11, 1998.
 
 James R. Nichols, Santa Barbara, CA, for plaintiffs-appellants.
 John K. Rubiner, Los Angeles, CA, for defendants-appellees.
 Scott B. Campbell, Santa Barbara, CA, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California Kim M. Wardlaw, District Court Judge, Presiding. D.C. No. CV 97-3520-KMW (RCx).
 Before: FLETCHER, FERNANDEZ, and RYMER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants, Foundation for Horses and Other Animals and individual members of Foundation (collectively, Foundation), appeal the district court's grant of summary judgment in favor of defendants, the National Park Service, the estate of Pier Gherini, and various individuals (collectively, NPS).[1] Foundation asserts that NPS violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., when it decided to remove a herd of twelve horses from Santa Cruz Island. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 2
 This action concerns horses located on Santa Cruz Island, one of the Channel Islands off the coast of southern California. In 1980, Congress enacted the Channel Islands National Park Act (CINPA), directing the Secretary of the Interior to acquire pieces of real property throughout the Channel Islands to be incorporated into the Park. 16 U.S.C. § 410ff et seq. Environmental study began immediately. At that time, and up until recently, the eastern portion of Santa Cruz Island was owned by the Gherini family and used primarily for ranching.[2]
 
 
 3
 In 1983, a Draft Land Protection Plan was developed along with a draft Environmental Assessment (EA). The draft plan and EA recommended that NPS purchase the Gherini property and that ranching activities be ceased. The draft EA also stated that the removal of sheep and other exotic animals from Santa Cruz would "permit a number of significant plant species to expand beyond their present small refuge habitats."
 
 
 4
 The final Land Protection Plan was circulated in 1984. At that time, NPS also circulated a Draft General Management Plan Supplemental Environmental Assessment (1984 Draft GMP/EA), requesting public input. The 1984 Draft GMP/EA specifically provided for the removal of all exotic animals, including horses. The draft was finalized in September 1984. Inter alia it stated that when Santa Cruz island is purchased, "[a]ny remaining exotic animals such as cattle, sheep, elk, deer, swine and horses will be removed."
 
 
 5
 The final GMP was approved by NPS Regional Director and a FONSI (Finding of No Significant Impact) was issued in October, 1984. The stated purpose of the plan is to restore the islands to their natural conditions. As such, NPS concluded that an environmental impact statement (EIS) would not be necessary.[3]
 
 
 6
 The acquisition of the eastern portion of Santa Cruz was delayed because one of the family members who had an undivided one-fourth interest in the Gherini land refused to sell his interest to the government. As a result, in November 1996, Congress revised the CINPA to acquire by purchase or condemnation all of the Gherini property. This suit was brought six months later, in May 1997.
 
 
 7
 Foundation filed a complaint requesting a Temporary Restraining Order, Preliminary and Permanent Injunction, and Declaratory Relief. It alleged that NPS had failed to satisfy the procedural requirements of NEPA in failing to take a "hard look" at the adverse environmental consequences of removing the horses, in failing to provide an adequate statement of why an EIS is not necessary, and in failing or refusing to allow further study. Foundation also claimed an ownership interest in the horses.[4]
 
 
 8
 In May and June of 1997, Foundation requested a TRO and preliminary injunction. Both were granted. In September, after lodging the administrative record with the district court, NPS moved for summary judgment. It asserted four defenses to Foundation's claims: (i) that Foundation's action was barred by the statute of limitations; (ii) that the horses were personal property of the Gherini family and that the CINPA mandated that the Gherini's be allowed to remove the horses; (iii) that NPS's decision to remove the horses is not subject to NEPA as they were personal property; and, (iv) that the administrative record demonstrates that NPS's decision was not arbitrary or capricious. The district court granted summary judgment in NPS's favor, holding that NPS had not acted arbitrarily in concluding that the horses should be removed from the island. See Foundation for Horses and Other Animals v. Babbitt, 995 F.Supp. 1088 (C.D.Cal.1998). It did not reach NPS's other three claims. Id. at 1090.
 
 
 9
 Foundation timely appealed the district court's grant of summary judgment. An emergency stay pending appeal was granted by this court. The horses currently remain on the island.
 
 II.
 
 10
 On appeal, Foundation argues only that NPS acted unreasonably in failing to supplement the 1984 GMP/EA and FONSI when it was brought to its attention that there existed a herd of horses on Santa Cruz all born since NPS originally had studied the island.[5] We do not reach this issue, however, because we agree with NPS that Foundation has provided no support for its assertion that these horses are subject to the provisions of NEPA. As they are privately owned personal property, the CINPA mandates their removal and they are not the subject matter of procedures mandated by NEPA. We affirm the district court on this alternative ground. See United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992) (holding that we may affirm the district court's decision on any ground supported by the record).
 
 III.
 
 11
 NPS asserts that the horses are the private property of the Gherini family. Foundation offered no evidence to the district court to counter this contention. In fact, Foundation too argued that the horses are private property, although it contended that Foundation was the rightful owner of the horses. After NPS moved for summary judgment and asserted that the removal of the horses was not subject to NEPA because the horses were private property, Foundation tried to withdraw its previous claim of ownership, claiming that "no such personal property claim can be made until these wild horses are captured." Foundation never moved to amend its complaint, however. More importantly, it never sought to introduce evidence to support its new position.
 
 
 12
 Even if Foundation had amended its complaint, its bald assertion that the horses are not privately owned personal property would have been insufficient to preclude summary judgment. See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir.1993) ("A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials in pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.' ") (citing Fed.R.Civ.P. 56(e)). The only evidence it did submit to the district court supports NPS' contention that the horses are privately owned. For example, Foundation put forth the declaration of Francis Gherini who stated that, because of his advanced age and the public support for the preservation of the horses, he "donated said horses to a nonprofit organization dedicated to their preservation, management and care," i.e., to Foundation. The declaration of Lynne Sherman, a named plaintiff in this case, stated that the "foundation recently acquired sole ownership of these horses," and included a copy of the Bill of Transfer from Francis Gherini to Foundation. Foundation cannot defeat the earlier, sworn affidavits it submitted by simply "withdrawing" its ownership claim or by stating in conclusory fashion that the horses are feral or wild.
 
 
 13
 Since the horses are privately owned personal property, we agree with NPS' contention that Congressional mandate requires their removal. See 16 U.S.C. § 410ff-1(e)(4) (stating that NPS "shall not allow any unauthorized use [of the island] ... [and] shall permit the orderly termination of all current activities and the removal of any equipment, facilities, or personal property" from the Channel Islands). We also agree that their removal as personal property is not subject to NEPA. See Lake Berryessa Tenants' Council v. United States, 588 F.2d 267, 271-72 (9th Cir.1978) (holding that government directive that privately-owned floating structures be removed from lake not major federal action subject to NEPA). We conclude that Foundation cannot maintain a NEPA action.
 
 IV.
 
 14
 NPS's contention that the horses are privately owned was not contested, and was in fact supported by the sworn declarations submitted to the district court by Foundation. Their removal is not subject to NEPA. We AFFIRM.[6]
 
 
 
 [1]
 Foundation asserts a NEPA claim. The federal government normally is the only proper defendant to a NEPA action. See Sierra Club v. United States Environmental Protection Agency, 995 F.2d 1478, 1485 (9th Cir.1993). In the instant case, the individual defendants were joined because of their purported property interests in the horses. As we explain below, the horses are privately owned personal property. As such, Foundation cannot assert a NEPA claim
 
 
 [2]
 The remaining and major portion of the island is owned by the Nature Conservancy
 
 
 [3]
 An EA is a preliminary study used to determine whether a more extensive EIS is necessary. NPS concluded that an EIS was not necessary because it did not identify any significant adverse consequences from its actions to restore the islands to their natural conditions
 
 
 [4]
 Foundation claimed that Francis Gherini, not a party to this litigation, gave the horses to Foundation
 
 
 [5]
 Foundation asserts that when NPS visited Santa Cruz Island in 1982 and 1983, it saw only corralled horses on the island, and based its decision to require removal of the horses on the fact that the horses were domesticated. After its visit in 1983, however, the horses were no longer held in a corral. The horses in contention in this suit are the offspring of the formerly corralled horses. Foundation claims that all of the formerly corralled horses have since died. Thus, the horses NPS observed in 1983 were corralled animals while the horses at issue in this suit have never been corralled. NPS does not challenge Foundation's recitation of the facts, although it does challenge Foundation's assertion that the horses are no longer privately owned personal property
 
 
 [6]
 We also dissolve the injunction which we granted pending our further order